J. S. McBRIDE v. THE FIDELITY AND CASUALTY CO. OF NEW YORK.

Delivered July 3, 1896.

Penalty—Foreign Guaranty Corporation—Liability in This State.

The act of 1891, p. 178 (Rev. Stats., art. 742), provides that when any corporation cancels a bond of guaranty, it shall furnish upon demand to the person whose bond is canceled a full statement of the facts on which its action in so doing was based, under penalty to him of $500, in addition to all actual damages.   Defendant, a New York corporation, did not, after the passage of this act, comply with its terms by filing its articles of incorporation here, and making the required deposit, and did not make any further guaranty contracts in this State, but did contract in New York with another New York (telegraph) corporation to guarantee the fidelity of plaintiff, an employe of the latter at a station in Texas, and afterwards canceled such guaranty, refusing to furnish plaintiff a statement as above required.   Held, that the act was without extra-territorial effect, and defendant was not liable for the penalty.

APPEAL from the County Court of Grayson. Tried below before Hon. J. H. WOOD.

*Beaty & Culver*, for appellant.—The court erred in his first conclusion of law by concluding that the Act of 1891, providing for the penalty sued for by plaintiff was intended by the Legislature to apply only to such guaranty and fidelity companies as formally entered the State to do business by filing their articles of incorporation and by-laws and making a deposit of $25,000. And in not finding that defendant company was liable regardless of whether it had complied with the law allowing it to do business in this State. Acts 22d Leg., pp. 176-178; Hooper v. People, 15 Sup. Court Rep., 207; Laughter v. Seeta, 59 Texas, 186; Engelking v. Von Wamel, 26 Texas, 472; Allison v. Brookshire, 38 Texas, 201; Cobbs v. Coleman, 14 Texas, 595.

*Crawford & Crawford, Dillard & Muse*, and *F. B. Dillard*, for appellee.—1. The Act of 1891 providing for the penalty sued for in this case was intended by the Legislature to apply to only such guaranty and fidelity companies as formally entered the State to do business by filing its articles of incorporation and by-laws and making a deposit of $25,000. Gen. Laws 22d Leg. p. 176; Heard v. Pierce, 8 Cush., 338, reported also in 24 Am. Dec., 762.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellant, J. S. McBride, in the County Court of Grayson County, March 29, 1894. He sought to recover of appellee Fidelity and Casualty Company the statutory penalty of $500 for its failure and refusal to furnish him, after demand, with a statement in writing of the facts on which its action was based in canceling his bond as manager of the Western Union Telegraph Company at Sherman, together with the names of its informants and their place of residence. He also claimed $20 as additional damages on account of expenses incurred in making a new bond with personal security after his bond by appellee had been canceled, and his payment to appellee of $6.94, for which it issued to the Western Union Telegraph Company a bond for him guaranteeing his fidelity as manager of said company's office at Sherman from June 27, 1893, to June 1, 1894, its subsequent cancellation of said bond on November 2, 1894, requests for the information upon which it acted, with name of informant, etc., and the failure and refusal of appellee to comply with said request.

Appellee presented general and special demurrers, which were overruled. It answered by a general denial, and specially that whatever information it may have received as to appellant was received as confidential communications, and that it could not have disclosed the same without violating its agreement with the author, and that the law which seeks to compel it to do so is against public policy, unconstitutional and void.

Without a jury, the case was tried before the court, who rendered judgment for the defendant, from which this appeal is taken.

From the testimony, and the conclusions and judgment of the court thereon, we conclude—that in July, 1893, appellant was in the employ of the Western Union Telegraph Company as its manager at Sherman, Texas. That during said month the defendant company was a New York corporation, doing a fidelity and casualty business in said last named city; and by a contract entered into in New York between the last named company and said Western Union Telegraph Company, which was also a New York corporation, the Fidelity and Casualty Company issued to the telegraph company a schedule bond or open policy, whereby it guaranteed the fidelity of a number of the telegraph company's employes in different States of the union, including, among others, the appellant, J. S. McBride, as an employe at Sherman, Texas. The premium for such guarantee was paid by the employes, and appellant, through the telegraph company, paid the stipulated premium, $6.94, and his fidelity as an employe of the telegraph company was guaranteed from June 27, 1893, to June 1, 1894. The open policy or schedule bond was delivered by the Fidelity and Casualty Company to the telegraph company in New York, and it does not appear in the statement of facts, and we have not before us the terms, stipulations or conditions of the paper.

After the Act of 1891 was passed, the appellee did not comply with its terms, and did not make any contracts in the State of Texas in its fidelity and guaranty business, but did business in the State in another line of its business.

In October, 1893, the appellee notified the telegraph company in New York that it would not be liable on the said bond or policy after November 2, 1893, and terminated its liability thereon; and appellant gave to the telegraph company a new bond with personal security.

In December, 1893, and January, 1894, the appellant, who was then in Sherman, Texas, applied by letters to the appellee, directed to it at its office in the city of New York, and which it received there, requesting appellee to furnish him a statement in writing of the facts upon which its action was based in terminating its liability upon such bond or policy of guaranty, and for the name of the informant and his place of residence; and no reply was made by appellee to either letter.

The only assignment of error presented is as follows: "The court erred in his first conclusion of law, by concluding that the Act of 1891 providing for the penalty sued for by plaintiff was intended by the Legislature to apply only to such guaranty and fidelity companies as formally entered the State to do business by filing their articles of incorporation and by-laws and making a deposit of $25,000. And in not finding that defendant company was liable, regardless of whether it had complied with the law allowing it to do business in this State."

Under this assignment of error we deem it unnecessary to consider any question in regard to the $20 claimed as damages (outside of the penalty)

which appellant claimed in his petition that he had sustained by reason of the claimed violation of the guaranty contract. In fact, this claim seems to have been abandoned on the trial, as the contract of guaranty was not introduced in evidence and all parties concerned seem to have acquiesed in the proposition that the appellee had the right under the contract to terminate its liability by giving notice to the telegraph company, which was done.

The contention of appellant seems to be, that he is entitled to recover of appellee the statutory penalty of $500, under the following clause of the statute: "When any corporation shall cancel a bond of guaranty or indemnity, or shall notify the employer of the person whose fidelity is guaranteed that said corporation will no longer guarantee or be security for the fidelity of said person, or when said corporation has once guaranteed the fidelity of any person, or acted as security therefor, and on application refuses to do so again, it shall furnish to such person a full statement in writing of the facts on which the action of the corporation is based, and if such action be based in whole or in part on information, all such information, together with the name or names of the informants, with their place of residence, and any corporation failing or refusing to furnish such written statement within thirty days after a request therefor, shall be liable to the person injured in the sum of five hundred dollars, in addition to all other damages caused thereby, which may be sued for and recovered in any court of competent jurisdiction." Rev. Stats., art. 742 (Acts 1891, p. 178).

The right of action upon this part of the case is based, not upon cancellation of the bond of guaranty; nor upon any damage or any inconvenience growing out of the same; nor upon any refusal of the company to guarantee him again; but, upon a refusal of the company to furnish a full statement of the facts upon which it acted in cancelling the guaranty.

It cannot be seriously questioned, that at the time of such cancellation, as well as the time of the demand for the information, the appellee was a New York corporation, doing business in New York, where the demand was made, and it was not doing any business of the character mentioned in the State of Texas, nor had it submitted itself to the jurisdiction of the State of Texas under the Act of 1891.

The demand was made upon it in the State of New York. Its failure to furnish such information was in New York. The act in question is in derogation of the common law, and must be strictly construed.

The penalty prescribed is local in its application, and it has no extra-territorial operation or effect. Rorer on Interstate Law, 167, 149, 158; 18 Am. & Eng. Ency. of Law, 270, 273; Endlich on Interpretation of Statutes, sec. 169; Sutherland on Stat. Const., secs. 12, 14; Blaine v. Curtis (59 Vt., 120), 59 Am. Rep., 705.

The case of Hooper v. People of California (15 Sup. Ct. Rep.), is relied upon by appellant as his leading authority to establish his right to recover. We do not think that case will sustain his position. A

statute of California denounced a penalty against any person in that State who should procure or agree to procure for any resident of the State any insurance from any insurance company not incorporated under the laws of the State, unless such company or its agent had filed the bond required by the laws of the State relative to insurance. A firm of insurance brokers had an agent in the State, and also an office outside of the State. Their agent procured an application which he sent to the brokers, and they obtained the insurance from a foreign company which had not complied with the law. It was held that the agent was liable under the statute. There was a local statute, and its application was local. In that case Judge White in delivering the opinion of the court, said: "It is said that a right of a citizen to contract for insurance for himself is guaranteed by the fourteenth amendment, and that, therefore, he cannot be deprived by the State of the capacity to so contract through an agent. The fourteenth amendment, however, does not guarantee the citizen the right to make within his State, either directly or indirectly, a contract, the making whereof is constitutionally forbidden by the State. The proposition that, because a citizen might make such a contract for himself beyond the confines of his State, therefore he might authorize an agent to violate in his behalf the laws of his State within her own limits, involves a clear non sequiter, and ignores the vital distinction between acts done within and acts done beyond a State's jurisdiction."

In the dissenting opinion of Judge Harlan (with whom concurred Justices Brewer and Jackson) it was said: "If he preferred insurance in a company that had no agent in California, he had a right to that preference; and any interference with its free exercise would infringe his liberty. . Suppose he had himself applied, by mail, directly to Johnson & Higgins for insurance on his vessel, and that firm had delivered the policy in question to an express company, with directions to deliver it to Mott. Or suppose that Mott had made his application, by mail, directly to the company. I cannot believe that a statute making his conduct in either of the cases supposed a criminal offense, would be sustained as consistent with the constitutional guaranties of liberty."

In both opinions the principle is fully recognized that a contract made outside of the State, and acts performed outside of the State, could not render a non-resident liable to a penalty under a State statute. In this case the demand was made in New York, upon a New York corporation, for information concerning its business transacted wholly in that State, and its failure or refusal to furnish the information was there. It did not thereby become liable for a penalty under a State statute of Texas.

We deem it unnecessary to discuss the other interesting questions presented in the able briefs and arguments of counsel.

We find no error in the judgment, and it is affirmed.

*Affirmed.*