STATE, Respondent, vs. COLUMBIAN NATIONAL LIFE INSURANCE COMPANY, Appellant.

*January 14—February 1, 1910.*

*Statutes: Penalties: Construction: Life insurance companies: Withdrawal from state: Annual reports: "Doing business" in this state.*

1. In construing a statute, effect must be given if possible to every word, clause, and sentence thereof.
2. The rule that a criminal statute should not be so construed as to multiply offenses where such a construction can reasonably be avoided, is equally applicable to statutes imposing pecuniary penalties.
3. Statutes imposing penalties must be strictly construed, and will not be extended by implication. Doubtful questions thereunder are to be resolved favorably to those from whom the penalties are sought to be recovered.

4. A life insurance company which had surrendered its license and attempted to withdraw from the state, maintaining no agents and writing no new insurance here, and doing, through correspondence, only those acts which were necessary to fulfil its obligations under outstanding contracts with policy-holders residing in the state, was doing business in this state so as to be subject to reasonable regulation for the benefit of its resident policy-holders. *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281, distinguished.

5. Such company is not, however, "doing business in this state" within the meaning of sec. 1954, Stats. (Laws of 1907, ch. 597), requiring the filing of the annual statement therein prescribed. The words "doing business" in that section mean doing such business as is usually carried on by corporations regularly licensed to transact business in this state.

6. The penalty imposed by sec. 1954 for failure to file the annual statement therein prescribed is not applicable to a failure to comply with sec. 1953n, Stats. (Laws of 1907, ch. 584), which provides that every life insurance company doing business in this state, "or having in force any policies issued or delivered therein," shall furnish the report required by sec. 1954 and certain other additional information.

[7. Whether secs. 1953n and 1955o—5, Stats. (Laws of 1907, ch. 584 and ch. 483), are valid, not determined.]

8. Timlin, J., is of the opinion that a foreign corporation which has withdrawn from the state except for the purpose of service of process to enforce its former contracts, cannot be made subject to a penal law of this state for failure to file annual reports.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Reversed.*

This action was brought to recover a penalty. Prior to December 31, 1907, the defendant had been licensed to transact and did transact a general life insurance business in the state of Wisconsin, and on the last-named date had 283 policies of insurance outstanding and in force in the state. The defendant on that date surrendered its license and withdrew, or attempted to withdraw, from the state of Wisconsin and cease doing business therein. After December 31, 1907, no agent or officer of the defendant resided within the state and no new business was written. The defendant refused to file, on March 1, 1908, the report required by sec. 1954, Stats.

(1898), as amended by ch. 597, Laws of 1907, and also re-
fused to file the report required by sec. 1953n, Stats., being
ch. 584, Laws of 1907. The complaint averred that such
report was not filed within the time required nor within one
month thereafter, and prayed for damages in the sum of
$1,000. From a judgment awarding such damages this ap-
peal is taken.

For the appellant there was a brief by *Bloodgood, Kemper
& Bloodgood,* attorneys, and *Jackson B. Kemper,* of counsel,
and a separate brief by *Frederick H. Nash,* of counsel; and
the cause was argued orally by *Mr. Jackson B. Kemper* and
*Mr. Nash.*

For the respondent there was a brief by the *Attorney Gen-
eral* and *Russell Jackson,* deputy attorney general, and oral
argument by *Mr. Jackson.*

BARNES, J.    Ch. 584, Laws of 1907 (sec. 1953n, Stats.),
reads as follows:

"Every life insurance company doing business in this state,
or having in force any policies issued or delivered therein,
shall annually furnish the report required by sec. 1954 and
with such report separately for its participating and nonpar-
ticipating business and its ordinary and industrial business a
statement exhibiting the gains and losses separately for the
first year's business and for the total business of the company
upon blanks prepared by the commissioner in substantially
the form heretofore required. Where a separate account of
any items required on such statement shall not be kept as to
the participating and nonparticipating or ordinary and indus-
trial business of any company, such statement shall state what
proportion of such items is apportioned to each kind of such
business. Such company shall also furnish such other infor-
mation in regard to said matters as the commissioner of in-
surance may require."

Sec. 1954, Stats. (1898), as amended by ch. 237, Laws
of 1903, and ch. 597, Laws of 1907, requires every life insur-
ance company doing business in Wisconsin to file, on or be-

fore March 1st in each year, in the office of the insurance-
commissioner, an annual statement giving a complete and ac-
curate account of its business and financial condition, verified
in a manner prescribed, and covering the year ending on the-
preceding 31st day of December.    The statute then enumer-
ates the items of information that must be embodied in the
statement, being thirty-four in number.    For failure to file
such report by March 1st in each year a penalty of $500 is
provided, and for failure to file thereafter a further penalty
of $500 per month is imposed while such company shall have
any policy in force in this state, until the statement is filed.
Prior to the time ch. 597, Laws of 1907, went into effect, the
cumulative penalty was effective for every month the insur-
ance corporation continued to transact business in the state
until the statement was filed.    Ch. 597, Laws of 1907, be-
came effective on the same day as ch. 584.

Ch. 483, Laws of 1907 (sec. 1955o—5, Stats.), reads:

"Any corporation violating any of the provisions of the-
laws of this state relating to insurance shall, where no other
penalty is prescribed, be punished by a fine of not more
than five thousand dollars and any person violating any of
the provisions of the laws of this state relating to insurance
shall, where no other penalty is prescribed, be punished by a
fine of not more than one thousand dollars, or by imprison-
ment in the county jail not exceeding one year, or by both
such fine and imprisonment."

It will be observed that the report required by sec. 1954
must be made by companies doing business within the state,
and that the report required by sec. 1953n must be made by
companies doing business within the state, or having in force-
any policies issued or delivered therein.

It will be further observed that sec. 1953n prescribes no
penalty for its violation, and that sec. 1955o—5, which be-
came effective on the same day, provides that any corporation
violating any laws of the state relative to insurance, where
no other penalty is prescribed, shall be punished by a fine not

exceeding $5,000, and that any person violating such laws may be punished by fine or imprisonment, or both.

It is contended by the state that the defendant violated the provisions of secs. 1953n and 1954, Stats. (Laws of 1907, ch. 584 and ch. 597), and that the penalty provided for in sec. 1954 is not only applicable to the latter statute, but also to a violation of sec. 1953n, and that both statutes are valid laws.

The defendant, on the contrary, urges that sec. 1954 has no application to it because it is not doing business in the state, and was not at the time it was required to file a report under that section on March 1, 1908. As to sec. 1953n, it is argued that it impairs the obligation of contracts and is violative of the defendant's rights as guaranteed by the XIVth amendment to the federal constitution, and that in any event the action will not lie because the penalty sued for cannot be recovered, for the reason that it is not applicable to sec. 1953n.

The view we have taken of the case necessitates a discussion of but two questions: (1) Did the defendant violate the provisions of sec. 1954 by failing to comply therewith? and (2) Can the penalty prescribed by sec. 1954 be recovered for a violation of the provisions of sec. 1953n?

The answer to the first question depends on whether the defendant was "doing business" within the state after its attempted withdrawal, within the meaning of those words as used in that statute. If it was, then it violated the law by failing to file the required report, and is liable for the penalty imposed by that section for its violation.

The defendant has in force in Wisconsin 283 policies of life insurance. The amount of such insurance in the aggregate, or the amount of annual premiums collected thereon, does not appear in the record, but presumably both amounts are quite large. By its insurance contracts in force the defendant is obligated to notify policy-holders when their premiums are about to become due, and it appears from the sam-

ple policy made a part of the record that such premiums fall due annually. It is admitted that the defendant has complied with its contracts by giving the required notices. The defendant continues to collect its premiums and to pay its obligations under its policies as they mature. It is almost inevitable that the prudent conduct of the business carried on in Wisconsin will necessitate investigations of claims made under policies in force in this state and which must of necessity be made therein. It may be conceded that the defendant has done everything in the way of attempting to cease doing business in the state which it might do without violating the obligations of its contracts which were in force when it ceased to take any new insurance because certain laws passed in 1907 were obnoxious to it. It thereafter employed no agents in Wisconsin and sought no new business therein, and conducted its business with reference to outstanding contracts by correspondence through its home office in Boston or through agents residing without the state. Notwithstanding these facts, we entertain little doubt that the acts which the defendant must of necessity do in order to carry out its contract obligations with policy-holders residing in this state constitute doing business therein, so that defendant is subject to reasonable regulation for the benefit of residents of Wisconsin holding its obligations. The highest tribunal in the land has said that the identical acts which the defendant in this action is performing in reference to its insurance contracts constitute doing business within a state. *Conn. Mut. L. Ins. Co. v. Spratley,* 172 U. S. 602, 610, 611, 19 Sup. Ct. 308; *Commercial Mut. Acc. Co. v. Davis,* 213 U. S. 245, 255, 256, 29 Sup. Ct. 445. Nothing that is out of harmony with this view of the law is said in *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281, 97 N. W. 940. The controversy there related to a single transaction. The mortgage sought to be foreclosed was given before sec. 1770*b*, Stats. (1898), was passed. The corporation owning it did no act

in reference thereto except to commence a foreclosure action in the courts of this state long after the indebtedness fell due, and it was held that neither the passive holding of a lien acquired prior to the passage of the law nor the commencement of a suit was the transaction of business within the forbidden sense. There is a palpable difference between the nature of the acts performed by the defendant in the case before us and the act of the plaintiff in the *Chicago T. & T. Co. Case*. Where an insurance company is transacting the volume and kind of business that this defendant is transacting from time to time with several hundred individuals in Wisconsin, it would be anomalous to say that it was not transacting business here because it did not happen to have a resident agent within the state. It is not doing all the kinds of business which it transacted before, but it is none the less doing business.

But it does not follow that because the defendant is doing business in Wisconsin it is doing business here within the meaning of sec. 1954, Stats. (Laws of 1907, ch. 597). To determine that question we must endeavor as best we may to ascertain the legislative intent. There are persuasive considerations that suggest the conclusion that the legislature, in using the words "doing business," meant such business as was usually carried on by corporations regularly licensed to transact business in this state.

By ch. 59, Laws of 1870, the legislature adopted a comprehensive scheme for the regulation of the business of life insurance in Wisconsin. This act repealed ch. 158, Laws of 1867, which prescribed the conditions under which domestic companies might transact a life insurance business, and also repealed ch. 179 of the general laws of the same year, which regulated foreign life insurance companies desiring to do business within the state. While said ch. 59 has frequently been amended and added to by subsequent legislatures, it, in reality, furnishes not only the basis of our present law relative to the conduct of life insurance business in Wisconsin,

but also the body of it, as will be seen by a reference to the revisers' notes under secs. 1947 to 1954, inclusive, Stats. (1898). The act of 1870 prohibited any life insurance company from transacting any business in this state without first having obtained a license therefor. Sec. 27. This provision is found in sec. 1947, Stats. (1898). Every life insurance company not organized under the laws of this state, and desiring to do a life insurance business therein, was required to file a copy of its charter with the secretary of state before doing any business within the state. Sec. 21. This requirement is found in sec. 1953, Stats. (1898), which section, however, names the commissioner of insurance, instead of the secretary of state, as the officer with whom the filing must be made. Such company was also required to appoint an attorney upon whom process might be served as a prerequisite of doing business within the state, and such appointment was to continue so long as there was any outstanding liability against the company therein. Sec. 15. This subject is covered by sec. 1953, Stats. (1898). By the provisions of secs. 4, 6, 7, and 9 life insurance companies doing business in the state were required to file an annual report, giving detailed information about their business, as well as facts that might bear upon their solvency. The provisions of these four sections, as subsequently amended, are found in sec. 1954, Stats. (1898). This law contemplated that no foreign life insurance company should transact any business in this state until it had satisfied the proper authorities that it was solvent, that it had procured a license entitling it to do business, and had appointed an agent upon whom process might be served. It did not recognize the transaction of business under any other condition. When it spoke of transacting "any business," it meant any business which an insurance company was licensed to transact. When these requirements were complied with as a matter of safety to policy-holders, the data first required by sec. 7 of the act, and later by sec. 1954, Stats. (1898),

should be furnished and filed annually by companies doing business in the state, so that its proper officers might keep in touch with the financial standing of the company. When the legislature provided in detail the conditions under which a life insurance company might do business within the state, and then provided for reports that should be made by such companies doing business therein, it is reasonable to suppose that it intended such provisions to apply to companies complying with its regulations and holding its licenses to do business. This view is strengthened by sec. 22 of the act, which defined the acts that should constitute a person an agent for a life insurance company, and by sec. 23, which provided that: "Any agent making insurance, in violation of any law of this state regulating life insurance companies, shall forfeit for each offense, a sum not exceeding five hundred dollars." The provisions of secs. 22 and 23 are, in all their essential features, found in secs. 1976 and 1977, Stats. (1898). No doubt the legislative thought was to reach insurance companies which had not complied with the law, by imposing a severe penalty on the agents who represented them in the transaction of an unlawful business. The arrangement of the various provisions of the law of 1870 in our Revised Statutes, and the amendments thereto that have been enacted from time to time, do not suggest any legislative purpose to enlarge the meaning of the words "doing business" or to give them a more comprehensive import than they had in the original act.

But the most cogent reason to support the construction which we adopt is found in sec. 1953n, Stats. (Laws of 1907, ch. 584), under which this action is brought. It provides (1) that companies doing business within the state shall file the report required thereby; and (2) that companies having in force any policies within the state, issued or delivered therein, shall file such report. If the legislature intended that having policies within the state should constitute doing

business therein, within the meaning of sec. 1954, then the words "or having in force any policies issued or delivered therein" are entirely superfluous. It is an elementary rule for the construction of statutes that effect must be given, if possible, to every word, clause, and sentence thereof. 2 Lewis's Suth. Stat. Constr. § 380, and cases cited. This rule of well-nigh universal application would necessarily be ignored if we should hold that the words "doing business," as used in sec. 1953n or in sec. 1954, Stats., were intended to reach the case of an insurance company which had taken out no license to do business in the state and which maintained no agents therein and which transacted only such business within the state as it was obligated to transact under its existing contracts. We conclude that the defendant in this case did not violate the provisions of sec. 1954, Stats. (Laws of 1907, ch. 597), by failing to file the report required thereby. It is apparent, however, that defendant did violate sec. 1953n by failing to file the report required by that section, and it remains to be considered whether the penalty provided for by sec. 1954 is recoverable for a violation of sec. 1953n.

Sec. 1953n itself provides no penalty for its violation. At the same session of the legislature at which sec. 1953n was passed, the general provision found in sec. 1955o—5 was enacted, evidently intended to cover any omissions in the way of punishment for violations of the provisions of the numerous laws passed at that session for the regulation of life insurance companies. Penal statutes have always been strictly construed in this state. *Stone v. Lannon,* 6 Wis. 497; *State v. Huck,* 29 Wis. 202; *Coleman v. Hart,* 37 Wis. 180; *Cohn v. Neeves,* 40 Wis. 393; *Wright v. E. E. Bolles W. W. Co.* 50 Wis. 167, 6 N. W. 508; *Crumbly v. Bardon,* 70 Wis. 385, 36 N. W. 19. It has been held that a criminal statute should not be so construed as to multiply offenses where such a construction can reasonably be avoided. *Wilson v. State,* 1 Wis. 184. This principle is equally applicable to penalties. The

penalty provided by sec. 1954, Stats., is severe. If it is applicable to the case before us, the defendant has already incurred liabilities thereunder aggregating $11,000. It was stated on the oral argument, and not denied, that there were thirty other life insurance companies that were subject to like penalties. It is argued that the penalty provided by sec. 1955o—5 is more severe than that found in sec. 1954. As to a person, no doubt it is, because it provides for imprisonment. As to a corporation, it may be in some cases if the maximum fine is imposed. But penalties that increase progressively from month to month, at the rate of $500 per month, are severe when the nature of the dereliction in this case is considered, and, we believe, much greater than the fine any court would ordinarily impose under sec. 1955o—5.

It would have been an easy matter to amend sec. 1954 so as to require any insurance company doing business in this state, or having policies in force therein, to make the report called for by that section. The section was in fact amended as part of the general legislative scheme for regulating the business of life insurance in 1907. It would have been easier still to have added a sentence to sec. 1953n extending to that section the penalty provided in sec. 1954. Neither course was taken; and we are asked to supply the omission, if omission there was, either by saying that the legislature intended that the penalty clause in sec. 1954 should apply in case of a violation of sec. 1953n, or that sec. 1953n should be construed as an amendment to sec. 1954. The method of statutory arrangement adopted by the legislature of 1907 negatives the idea that sec. 1953n was intended as an amendment of sec. 1954. Were this so, sec. 1954, embodying the amendment, would have been rewritten, thus obviating the necessity of creating a new and independent section in our statutes. A plausible argument may be urged in support of the contention that the legislature intended that the penalty sued for should be recovered for a violation of sec. 1953n. But, after all, we

come back to the proposition that the legislature has not said so; that its silence is significant; that one who seeks to recover a penalty must show legal authority to collect it; that statutes imposing penalties must be strictly construed and will not be extended by implication; and that questions of doubt are to be resolved favorably to those from whom it is sought to recover the penalty. See collection of cases under note 5, 13 Am. & Eng. Ency. of Law (2d ed.) 55.

If, by requiring to be filed with the commissioner of insurance certain information, together with the report required by sec. 1954, the legislature meant that the penalty provided by that section should measure the liability of the recalcitrant company, it should have said so, and not have left so important a matter to be the subject of speculation and conjecture. The conclusions reached render it unnecessary to decide upon the constitutionality of secs. 1953n and 1955o—5, Stats. (Laws of 1907, ch. 584 and ch. 483).

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.

TIMLIN, J.    I concur in the reversal of this judgment, but not with all that is said in the opinion. I think the reversal might also have been put upon these grounds: The legislature itself in enacting the statute in question (sec. 1953n) distinguished between life insurance companies doing business in this state and those merely having in force policies of life insurance issued or delivered in this state. This distinction is necessary to harmonize the provisions of other statutes upon the same subject, and it is in line with the decision of this court in *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281, 97 N. W. 940. Having come to the conclusion that the appellant is properly classed as an insurance company "having in force policies issued or delivered" in this state, the question arises whether a foreign corporation, having withdrawn from this

state except for the purpose of service of process to enforce its former contracts, can be made subject to a penal law of this state for failure to make and file with the insurance commissioner annual reports. I think the case in this particular is ruled by *McBride v. Fidelity & C. Co.* 14 Tex. Civ. App. 280, 37 S. W. 1091; *Hooper v. California,* 155 U. S. 648, 15 Sup. Ct. 207 (properly interpreted); *Pennoyer v. Neff,* 95 U. S. 714; *State v. Lancashire F. Ins. Co.* 66 Ark. 466, 51 S. W. 633, 45 L. R. A. 348; *Hammond P. Co. v. Arkansas,* 212 U. S. 322; *American B. Co. v. United F. Co.* 213 U. S. 347.

Unlike cases involving the offense of "uttering" or "publishing," the act or omission here sought to be penalized took place outside of the limits of the state, after the withdrawal of appellant from the state, and the appellant was not at the time actually or constructively within the state or a citizen of this state. *McBride v. Fidelity & C. Co., supra; Comm. v. Kunzmann,* 41 Pa. St. 429.