Currie, J.
The controlling statute is sec. 108.04 (10), Stats. 1957, which reads as follows:
“Labor dispute. An employee who has left (or partially or totally lost) his employment with an employing' unit because of a strike or other bona fide labor dispute shall not be eligible for benefits from such (or any previous) employer’s account for any week in which such strike or other bona fide labor dispute is in active progress in the establishment in which he is or was employed.” (Italics supplied.)
It is conceded that the strike at the plants, other than the Appleton plant, of Consolidated caused Schaeffer’s unemployment. Therefore, the crucial question before us is whether the Appleton plant is part of the same establishment as such other plants.
Certain words used in the Wisconsin Unemployment Compensation Act (ch. 108, Stats.) are defined in sec. 108.02, Stats., entitled “Definitions,” but not establishment. However, sub. (21) of such section provides in part as follows:
“Undefined terms. Any word or phrase used in this chapter and not specifically defined herein shall be interpreted in accordance with the common and approved usage thereof and in accordance with other accepted rules of statutory construction.”
The decision by the commission examiner, who sat as the appeal tribunal, in which it was held that the Appleton plant, *363 together with Consolidated’s other plants, constituted one establishment, was grounded upon Spielmann v. Industrial Comm. (1940), 236 Wis. 240, 295 N. W. 1.
It was determined in the Spielmann Case that the Milwaukee and Kenosha plants of the Nash-Kelvinator Corporation, although located 40 miles apart, constituted one establishment. The Nash-Kelvinator Milwaukee plant was devoted exclusively to the manufacture of automobile bodies, while its Kenosha plant was devoted to the manufacture of automobile parts other than bodies, and to the assembly of completed cars. The bodies made at the Milwaukee plant were transported to the Kenosha plant by trucks owned by NashKelvinator and driven by its employees. Ninety-eight per cent of the cars manufactured by Nash-Kelvinator were built pursuant to specific orders. The production in each plant was so highly synchronized that a body built in the Milwaukee plant against a given order met upon the Kenosha assembly line the chassis built in the Kenosha plant against the same order pursuant to a prearranged schedule. A strike at the Kenosha plant caused a shutdown of the Milwaukee plant. Employees thus thrown out of work at the Milwaukee plant filed for unemployment compensation benefits. The Industrial Commission held that, because of the functional integrality, general unity, and physical proximity of the two plants, they constituted a single establishment. The applications for benefits were denied because of the provision of sec. 108.04 (10), Stats. Both the circuit court and this court affirmed.
In the instant case we do not have the highly synchronized integration of production that was present in the Spielmann Case. The pulp produced at the Appleton plant, while necessary and essential for the operation of some or all of Consolidated’s papermaking plants, is equally usable by other paper manufacturers who use chemical pulp. If before Consolidated purchased its Appleton plant it had been purchasing *364 84 per cent of the chemical pulp produced in the Appleton plant, such plant might have been forced to close down during a strike at Consolidated’s papermaking plants. However, the Appleton plant under such circumstances would not constitute part of the same establishment as Consolidated’s papermaking plants under sec. 108.04 (10), Stats., because of the separate ownership. Merely because vertical integration has taken place through purchase of the Appleton plant does not necessarily make the acquired plant part of the same establishment as the plant, or plants, of the purchaser, which previously had been consuming the greater portion of the purchased plant’s production. This was well pointed out by the Minnesota court in Nordling v. Ford Motor Co. (1950), 231 Minn. 68, 85, 42 N. W. (2d) 576, 586, in construing the provision of the Minnesota Unemployment Compensation Act which corresponds to sec. 108.04 (10), Wis. Stats.
We are of the opinion that the legislature must have had something in mind besides mere interdependence of production when it employed the term “establishment ” in enacting sec. 108.04 (10), Stats. This, is because it is difficult to visualize a situation where a strike in one plant will result in the closing down of another plant of the same employer except where there is interdependence of production. Therefore, if the legislature had intended that in all such cases of closing down, because of a strike or labor dispute involving a particular employer, an employee should be barred from unemployment compensation, there would have been no necessity for limiting the location of the strike, or labor dispute, to the particular “establishment in which he is or was employed.”
In interpreting the term “establishment” as used in sec. 108.04 (10), Stats., the provision of sec. 108.02 (21) must be accorded due consideration. This latter provision requires that such term “be interpreted in accordance with the com *365 mon and approved usage thereof.” Webster’s New International Dictionary (2d ed.), defines “establishment” as follows :
“d The place where one is permanently fixed for residence or business; residence, including grounds, furniture, equipage, retinue, etc., with which one is fitted out; also, an institution or place of business, with its fixtures and organized staff; as, large establishment; a manufacturing establishment.” Webster’s New International Dictionary (2d ed.), p. 874.
The Michigan court recently had before it the interpretation of the word “establishment” in its unemployment compensation statute, which is the counterpart to sec. 108.04 (10), Wis. Stats., in Park v. Employment Security Comm. (1959), 355 Mich. 103, 94 N. W. (2d) 407. In that case employees at the Rouge plant of the Ford Motor Company at Dearborn, Michigan, were forced out of work because of a strike of the company’s forging plant at Canton, Ohio. The court in its opinion quoted the foregoing definition of establishment in Webster’s New International Dictionary (2d ed.), and declared (355 Mich. 116, 94 N. W. (2d) 412) :
“Judges and lawyers can frequently do astonishing things with words. No layman would venture to suggest that the single word ‘establishment,’ used in the paragraph above, could in normal usage be applied to both the Ford Rouge plant in Dearborn, Michigan, and the Ford forge plant in Canton, Ohio.”
In the opinion of this court in the Spielmann Case, this court declared (p. 246) :
“Much is made by appellant of giving to the word ‘establishment’ its ordinary meaning. A multitude of meanings of the word is given in the dictionaries. In Webster one of these meanings is a ‘permanent commercial organization;’ another is ‘a manufacturing establishment.’ Both of these *366 definitions fit the instant situation. The two plants manifestly constitute an establishment for the manufacture of automobiles, else the company has no establishment for their manufacture.”
We are now satisfied, from the context in which the word “establishment" appears in sec. 108.04 (10), Stats., it was not employed by the legislature as meaning a “permanent commercial organization,” and that a more-limited meaning was obviously intended. While sec. 108.02 (21) requires the statutory word “establishment’’ to be interpreted in accordance with the common and accepted usage thereof, such interpretation must also be made in accordance with other accepted rules of statutory construction.[1]
In Nordling v. Ford Motor Co., supra, the court stated that the test of functional integrality, general unity, and physical proximity should not be adopted as an absolute test in all cases of the type which confronts us on this appeal. Its conclusion was stated as follows (231 Minn. 89, 42 N. W. (2d) 588):
“We believe that the solution of the problem lies in determining from all the facts available whether the unit under consideration is a separate establishment from the standpoint of employment and not whether it is a single enterprise from the standpoint of management or for the more-efficient production of goods.”
Thus the test adopted by the Minnesota court is unity of employment which is part of the element of general unity comprising one of the three determinative factors of the test laid down in the Spielmann Case. In arriving at its conclusion in the Nordling Case the Minnesota court relied heavily *367 upon the history of the statute being interpreted. It pointed out that the antecedent British statute, upon which most American unemployment compensation acts are based, is the British National Insurance Act of 1911. Under this British Act, an employee was disqualified for benefits if his unemployment was the result of a work stoppage due to a trade dispute at a “factory, workshop, or other premises.” In both the Minnesota and Wisconsin acts, as well as those of many other states, the word “establishment” has been substituted for “factory, workshop, or other premises.” While we are not inclined to abandon the test laid down in the Spielmann Case of functional integrality, general unity, and physical proximity, and substitute unity of employment in its stead, we are of the opinion that unity of employment is deserving of more weight than unity of management in considering the factor of general unity.
There are several reasons why we decline to abandon the test of functional integrality, general unity, and physical proximity enunciated in the Spielmann Case. First, such test was not one adopted in the first instance by this court but instead was formulated by the Industrial Commission, an administrative agency to which the legislature had delegated the administration of the Unemployment Compensation Act. Secondly, twenty years have elapsed since the Spielmann Case test was adopted during which period the legislature has not seen fit to amend sec. 108.04 (10), Stats. Lastly, there is the history of the introduction and defeat of Bill No. 273, A., in the 1951 session of the legislature.
Such Bill No. 273, A., provided for the amendment of sec. 108.04 (10), Stats., by adding to the end of such statute this sentence: “Workplaces which are more than 10 miles apart shall not be considered a single establishment hereunder.” This bill was referred to the assembly committee on labor which held a public hearing on it on April 24, 1951. *368 At such hearing the statutory committee on unemployment compensation [2] appeared by its chairman in opposition to the bill, and submitted to such legislative committee a written report of the advisory committee’s views on Bill No. 273, A. Such report stated that the advisory committee was unanimously opposed to the bill. The Spidmann Case was cited in the report and an extract of this court’s opinion in that case was quoted in the report. We quote from a portion of such report as follows:
“It is worth emphasizing that a three-way test is now applied — under the present law — in determining whether two plants operated by the same employer are a single ‘establishment’ — namely (a) their general unity, and (b) their functional integrality, and (c) their physical proximity.
“Bill No. 273, A., deals only with the physical proximity —or distance — of the two plants or workplaces involved.
“If the bill’s proposed new language were enacted, there might (perhaps) be some question as to whether the enacting legislature intended that a single (one-way) test be used hereafter — namely, distance alone.
“(If a court applied only that single (distance) test, it could prove rather serious — by treating as a single establishment two plants only four miles apart, despite their lack of functional integration.)”
*369 The assembly committee on labor reported Bill No. 273, A., to the assembly for indefinite postponement, and the assembly pursuant to such recommendation did vote indefinite postponement. We deem this bit of legislative history to be most significant as tending to indicate satisfaction on the part of both the unemployment compensation advisory committee and the legislature with the test of functional integrality, general unity, and physical proximity set forth in the Spielmann Case.
In most instances, whether two plants of the same employer constitute one establishment, presents a question of fact for the determination of the Industrial Commission, and its finding on such issue would be controlling on reviewing courts. However, a line of demarcation necessarily has to exist beyond which the issue ceases to be one of fact and becomes one of law. Therefore, the commission cannot find that two plants constitute one establishment when under any reasonable interpretation of the statute this is not the case.
When we analyze the Spielmann Case we find a type of closely synchronized production that usually is not achieved between two plants separated by a distance of 40 miles and that went way beyond mere interdependence of production. In the instant case we have a plant which is separated by a distance of approximately 80 miles from the other plants of Consolidated which utilize the major portion of its production. Furthermore, the product produced is readily usable by paper manufacturers other than Consolidated, and commands its own market.
It is our considered judgment that the legislature never intended the word “establishment” as used in sec. 108.04 (10), Stats., to be applied to this situation so as to bar the employees of the Appleton plant from unemployment compensation benefits. Therefore, the determination *370 of the Industrial Commission, that the Appleton plant constitutes part of the same establishment as Consolidated’s other plants 80 miles distant, transcends a finding of fact and constitutes an erroneous conclusion of law. This requires that we affirm the judgment of the circuit court.
By the Court. — Judgment affirmed.

 For decisions of courts of other jurisdictions, which interpret the word "establishment” in their unemployment compensation statutes comparable to sec. 108.04 (10), Wis. Stats., see Anno. 28 A. L. R. (2d) 287, 324 et seq.

 Sec. 108.14 (5), Stats., provides that the Industrial Commission shall appoint an advisory committee to assist it in administering and carrying out the purposes of the Unemployment Compensation Act. Such committee is required to consist of a salaried employee of the commission as chairman with the other members equally divided between representatives of employees and employers. This committee is required by sec. 108.14 (5m), Stats., to submit its views on any pending bill relating to ch. 108, Stats., “to the proper legislative committee.” In 1951, this advisory committee was composed of Paul A. Raushenbush, chairman; labor members: J. F. Friedrich, George Haberman, Walter Jensen, and H. J. Thompson; and employer members: P. M. Chiuminatto, B. A. Krawczyk, George Kull, and H. J. Mellum. Mr. Raushenbush has served continuously as director of the unemployment compensation division of the Industrial Commission since 1934.