ABENDROTH and others, Respondents, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant: NORTHWEST AIRLINES, INC., Appellant.

*No. 17 (1974). Argued September 3, 1975.—Decided September 30, 1975.*
(Also reported in 233 N. W. 2d 343.)

For the appellant there were briefs by *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *Truman Q. McNulty.*

For the respondents there was a brief by *Stephen J. Hajduch* and *John A. Udovc,* both of Milwaukee, and oral argument by *Mr. Udovc.*

ROBERT W. HANSEN, J. The question of the ground employees' eligibility for unemployment compensation benefits during the pilots' strike centers on sec. 108.04 (10), Stats., providing:

"(10) LABOR DISPUTE. An employe who has left (or partially or totally lost) his employment with an employing unit because of a strike or other bona fide labor dispute shall not be eligible for benefits from such (or any previous) employer's account for any week in which such strike or other bona fide labor dispute is in active progress *in the establishment in which he is or was employed.*" (Emphasis supplied.)

The italicized portion of the statute limits the ban on unemployment compensation benefits. Such ban on collecting benefits limits the strike, or labor dispute, that bars recovery to the particular "establishment" in which the employee is or was employed.[1] In determining

[1] *See: Schaeffer v. Industrial Comm.* (1960), 11 Wis. 2d 358, 364, 105 N. W. 2d 762, this court there stating: "We are of the opinion that the legislature must have had something in mind besides mere interdependence of production when it employed the term *'establishment,'* in enacting sec. 108.04 (10), Stats. This is because it is difficult to visualize a situation where a strike in one plant will result in the closing down of another plant of the same employer except where there is interdependence of production. Therefore, if the legislature had intended that in all such cases of closing down, because of a strike or labor dispute involving a particular employer, an employee should be barred

whether a particular strike is in the particular "establishment" of the particular laid off employee claiming benefits, our court has held that the determination is to be made, taking into consideration three factors: (1) Functional integrality; (2) general unity; and (3) physical proximity.[2] We will deal with each such factor as applied to the respondents.

(1) *Functional integrality.* Where, as here, we deal with separated work areas or stations of a single employer, this element relates to the degree of interdependency and synchronization between the operations and locations involved. Involved is the particular and exact relationship between the place or locale of the strike and the place or work area of the employees claiming benefits. Generally speaking, except in the case of a conglomerate, the various plants or stations of a single employer are interdependent. However, the degrees of interdependency vary. Back in 1940, this court affirmed the denial of unemployment compensation benefits to the laid off employees of a Milwaukee auto body plant where the plant in Milwaukee was shut down because of an auto workers' strike in the main auto-making plant in Kenosha.[3] Our court laid heavy weight on the factor of functional integrality in denying such benefits. However, in the most recent case on the subject, this court found dependence, but no high degree of synchronization, between trucking terminals in Wisconsin and terminals of the same company in Chicago.[4] In the present case there is both interdependence and synchronization between the Milwaukee-

from unemployment compensation, there would have been no necessity for limiting the location of the strike, or labor dispute, to the particular *'establishment* in which he is or was employed.' "

[2] *See: Spielmann v. Industrial Comm.* (1940), 236 Wis. 240, 295 N. W. 1, followed as to factors to be considered in *Schaeffer v. Industrial Comm., supra,* footnote 1, and *Liberty Trucking Co. v. ILHR Department* (1973), 57 Wis. 2d 331, 204 N. W. 2d 457.

[3] *Spielmann v. Industrial Comm., supra,* footnote 2.

[4] *Liberty Trucking Co. v. ILHR Department, supra,* footnote 2.

Madison work area of the ground employees and the Seattle-Minneapolis strike area of the pilots. While the Milwaukee reservations facility did stay open eleven days after the pilots' strike began, there is not much point or purpose to selling tickets or maintaining ground crew services for an airline when the pilots are on strike and its planes are not flying. Interdependency is obvious, and, with all flight schedules and staffing decisions made at the general offices in Minneapolis, the fact of synchronization is also apparent. The weight to be given this factor goes on the employer's side of the scales in the balancing-of-factors approach.

(2) *Physical proximity.* In giving consideration to the factor of physical proximity, we give weight not only to the actual mileage between the strikebound work area and the place of employment of the workers claiming benefits, but also to the reason for the separateness of the two locations. In the *Spielmann Case*,[5] where a single "establishment" was found to exist despite a 40-mile gap between the strikebound main auto-making plant in Kenosha and the body plant in Milwaukee, it is apparent that the court viewed the separate locations of the two plants as incidental, certainly not required for the single function of making autos there involved.[6] Subsequently, in the *Schaeffer Case* where a chemical pulp plant and paper plants of the same employer elsewhere in the state were held not to constitute a single "establishment," this court did not stress the mileage or distance between the plants, emphasizing instead the separateness of function, noting that the pulp produced ". . . is equally usable by other paper manufacturers . . . ."[7] Obviously, in these two earlier cases, the factor of physical proximity was given little weight. However, in the more recent case,

[5] *Spielmann v. Industrial Comm., supra,* footnote 2.

[6] *Id.* at page 245, 246.

[7] *Schaeffer v. Industrial Comm., supra,* footnote 1, at page 363.

*Liberty Trucking Co. v. ILHR Department, supra,* which held truck terminals in this state not to be part of a single "establishment" with the main terminal in Chicago, the factor of physical proximity was given considerable weight.[8] Referring to the distances between the terminals involved, ranging from 88 miles to 330 miles, this court held that such ". . . distances tend to break down the concept of a tangible oneness . . . ."[9] While the *Liberty* holding notes that there is "no measuring stick" as to the significances of distances involved,[10] it clearly reinstates the factor of physical proximity as one to be given considerable weight.[11] As to whatever weight is to be given to this factor of physical proximity, it is clear that all such weight is here on the side of the employees claiming benefits. The distances between their work areas at the Madison and Milwaukee air terminals and the pilots' strikebound bases of operations in Seattle and Minneapolis are far greater than the distances involved in *Spielmann, Schaeffer* and *Liberty.* One need only to look at a map to see whose case is strengthened when the element of physical proximity is given consideration and weight in this case.

---

[8] *Liberty Trucking Co. v. ILHR Department, supra,* footnote 2, at page 340, this court stating: ". . . [T]he distance between each employer's terminal in Chicago and Wisconsin exceeds the distance involved in both *Spielmann* (40 miles) and *Schaeffer* (80 miles); but, more importantly, the distances tend to break down the concept of a tangible oneness although from the employer's standpoint the distances are prescribed and mark only the beginning and the end of its service."

[9] *Id.* at page 340.

[10] *Id.* at page 337, this court stating: "Several attempts have been made to formalize the element of physical distance into a mathematical certitude, but as yet no such measuring stick has been adopted."

[11] *Id.* at page 341, this court stating: "While there is no hard-and-fast rule as to distance, the terminals are in no real sense approximately close."

(3) *General unity*. The balancing-of-factors approach is not usually a two-out-of-three sets win the match proposition. However, here, with the first two factors—integrality and proximity—so completely offsetting each other, the third factor—general unity—takes on a scale-tipping significance. This element, our court has held, ". . . involves a consideration of both unity of employment and unity of management, with the former deserving more weight than the latter."[12] In dealing with the unit of employment, we deal with the matter of unity of employees and nature of the business. For this reason we rely heavily on the court's holding in *Liberty Trucking,* not only as to the rules of law laid down, but because an analogous branch of the transportation industry—there trucking, here air transportation—was involved. There this court found no general unity between the operations of branch terminals in Wisconsin by a multi-terminal common carrier with the strikebound principal terminal in Chicago. There our court concluded that: "While the nature of the product, *i.e.,* transportation, and the nature of the business may make terminals a part of the whole system, it still does not make the terminals one 'establishment.' "[13] What was said of the truck terminals of the common carrier there applies, it appears to us, to the in-state stations of the airlines shut down because of a pilots' strike at the Minneapolis headquarters and the Seattle pilots' base. *Liberty* made a point that there were local contracts on behalf of the Wisconsin terminal workers with the teamsters union that also represented the Chicago main terminal strikers. Here all of the affected employees in this state belonged to a union different than the one that represented the pilots and caused the strike. In fact, some belonged to no union at all. In *Liberty,* this court made a distinction between

[12] *Id.* at page 337.
[13] *Id.* at page 341.

dealing with a service rather than a manufactured product.[14] Of the earlier *Spielmann* ruling, it said that the court there had before it a situation where the assembly line at the body plant and the assembly line at the auto plant in Kenosha ". . . might have been alongside of each other in the same building."[15] The obvious suggestion is that automobile sales in a company-owned dealership, laid off because of the auto workers' strike at the Kenosha plant, might and would have been treated differently. In the case before us, we deal with a variety of services performed, not a production line in a manufacturing plant. Given this situation, involving the claim of benefits by ground employees of the same airline here involved, where and when the same pilots' association had gone on strike, the Michigan Supreme Court upheld the right of the ground employees to unemployment compensation, contrasting "the transitory nature of the flight engineers' work" with the "local character of claimants' work."[16] The Michigan court held this difference in the nature of work performed to be an additional factor to be considered along with integrality, proximity and unity. We see it as a part of the factor of general unity, relating as it does to the nature of the work performed from the standpoint of the workers' employment. It is material, not as to unity of management, but as to unity of employment.

To the trucking company's argument, in *Liberty,* that the trucking system and all its terminals as a matter

[14] *Id.* at page 339, the court stating: "The present case is unlike *Spielmann* and *Schaeffer* because we are not dealing with a manufactured product, but a service, and consequently, 'establishment' must be considered in this context."

[15] *Id.* at page 338.

[16] *Northwest Airlines v. Employment Security Comm.* (1966), 378 Mich. 119, 133, 142 N. W. 2d 649. (Cited and summarized in *Liberty Trucking Co. v. ILHR Department, supra,* footnote 2, at pages 336, 337, footnote 3.)

of law constituted a single "establishment," our court responded:

". . . The appellants' argument is the equivalent of saying that because of the nature of the entire trucking business, each transportation system is the 'establishment.' Since distances are meaningful in the trucking industry as one of the bases of freight charges and terminals are necessary to the service, the appellants' argument carried to its logical conclusion could establish a nationwide 'establishment,' which would be the equivalent of holding 'establishment' means the employer. We do not think the legislature had any such intention when it used the word 'establishment' in sec. 108.04 (10), Stats."[17]

The position of the airline company here as to the element of general unity is identical with the position urged by the trucking company in *Liberty*. There this court refused to establish such a nationwide "establishment," finding no unity of employment between the main terminal and the local terminals in this state. That holding warrants, if it does not require, holding here that the various local stations of Northwest Airlines do not constitute a single international "establishment," and that the ground employees at the Madison and Milwaukee stations or terminals did not share a unity of employment with the striking pilots at the Seattle and Minneapolis bases of pilot operations. The weight given to the factor of general unity, or lack of such unity here, falls on the respondents' side of the scales.

Balancing or taking into consideration the three factors —functional integrality, physical proximity and general unity—we conclude that the respondents, as ground employees at the Madison and Milwaukee terminals, are entitled to unemployment compensation, affirming the circuit court order that they are so entitled.

---

[17] *Liberty Trucking Co. v. ILHR Department, supra,* footnote 2, at pages 340, 341.

*Scope of review.*

The appellant, Northwest Airlines, Inc., also contends that the circuit court here exceeded its scope of review when it reversed the finding of the department appeals tribunal that respondents lost their employment because of a strike "in the establishment in which they were employed." The circuit court found such finding to be erroneous "as a matter of law." Judicial review here was limited to a question of law.[18] But the reviewing court was not bound by the department's decision on a question of law.[19] Factual findings of the department, in the absence of fraud, must be accepted as conclusive.[20] But here the material facts were stipulated and not in dispute. The issue as to the application of the term, "establishment," to the factual situation presented here became a question of law.[21] As this court has said, ". . . the commission cannot find that two plants constitute one *establishment* when under any reasonable interpretation of the statute this is not the case."[22] This is not a situation where conflicting inferences can be drawn from the evidence.[23] We agree with the trial court that here "as a matter of law" means no other factual finding could be reasonably drawn from the evidentiary facts stipulated

[18] Sec. 108.09 (7) (b), Stats. *See also:* Sec. 102.23 (1), Stats.

[19] *See: Liebmann Packing Co. v. Industrial Comm.* (1965), 27 Wis. 2d 335, 339, 134 N. W. 2d 458, this court stating: "The court is not bound by the commission's determination of a question of law."

[20] Sec. 102.23 (1), Stats.; *McGraw-Edison Co. v. ILHR Department* (1974), 64 Wis. 2d 703, 709, 221 N. W. 2d 677.

[21] *See: Kress Packing Co. v. Kottwitz* (1973), 61 Wis. 2d 175, 177, 212 N. W. 2d 97, this court holding: "Whether Kottwitz was an employee is a question of law to be determined by the application of well-defined rules to the facts."

[22] *Schaeffer v. Industrial Comm., supra,* footnote 1, at page 369.

[23] *See: Baez v. ILHR Department* (1968), 40 Wis. 2d 581, 585, 162 N. W. 2d 576.

and undisputed on this record.[24] We affirm both the judgment of the circuit court and its right to enter such judgment.

*By the Court.*—Judgment affirmed.

---

[24] *See: Kress Packing Co. v. Kottwitz, supra,* footnote 21, at page 179, this court holding: " 'As a matter of law' merely means no other factual finding could be reasonably drawn from the evidentiary facts."