DE LEEUW and others, Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 578 (1974).  Argued November 26, 1975.—Decided February 23, 1976.*
(Also reported in 238 N. W. 2d 706.)

For the appellants there was a brief by *David Loeffler* and *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *Mr. Loeffler.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *James L. Pflasterer* with whom on the brief were *Uclair W. Brandt,* chief counsel, and *David A. Pearson,* assistant chief counsel.

WILKIE, C. J.  In this unemployment compensation case the sole issue on appeal is whether the five plaintiff-appellants, bricklayers employed by Nelson & Company, Inc., a general construction firm, defendant-respondent here, were correctly held ineligible for unemployment compensation covering the time after each became unemployed until September 6, 1968, since they lost their employment because of a bona fide labor dispute in the Milwaukee area (involving other employees of the respondent and other employers), such denial being in accordance with the provisions of sec. 108.04 (10), Stats. The deputy commissioner, the appeal tribunal and the Department of Industry, Labor & Human Relations (DILHR) all held to this effect and this determination was confirmed by the circuit court.  We agree.

The facts are undisputed.  The five claimants are Milwaukee-area masons employed by Nelson & Company, Inc., a general construction firm.  Although Nelson is based in Racine, Wisconsin, during the summer of 1968 it had several multi-million dollar construction projects in the four-county area covered by Milwaukee, Washington, Waukesha, and Ozaukee counties.  It was a member of the Allied Construction Employers Association (ACEA), the bargaining agent for construction company employers in this four-county area.

On July 18, 1968, after negotiations for a new contract with the laborers had reached an impasse and a strike seemed imminent, ACEA locked out the laborers in this four-county area.  Even though mason work was available in the area, the effect of the lockout was to put area masons out of work.  Masons cannot work without laborers who are needed to mix mortar, carry block, and construct scaffolding.

Esche and Anderson were two Milwaukee-area masons who were laid off when the lockout began.  Esche called a Nelson foreman in Racine and asked for work in

Racine. He went to work there for two days, on July 22d and 23d, after which he was unemployed. Anderson worked until July 30th, when he was laid off. Both men worked until the mason work on the particular projects they were assigned to was completed.

Kerber was a Milwaukee-area mason who had been temporarily assigned to the Racine area prior to the lockout in order to set a particular type of stone at a certain project there. This temporary assignment was completed on August 2d, after which Kerber was unemployed. Drichta was another Milwaukee mason who was working on a Racine project when the lockout occurred. He continued working in Racine until this job was done on August 13th, after which he was unemployed. Fallon, the fifth mason, was also assigned to a Racine project at the time of the lockout. However, he was out of work with an injury from July 2d to July 22d. He returned to work in Racine for one day, July 23d. The job he was working on was finished on that day, and he was thereafter unemployed.

Mason work was available in the four-county area during this period, but these five masons could not return to jobs there because of the lockout. Milwaukee-area masons were out of work because of the lockout. Nelson was willing to continue these five masons working in Racine but could not because demand for mason work was low there, and there were no jobs available. The five claimants continued to be unemployed until September 6, 1968, at which time the lockout ended, and both laborers and masons returned to work.

This controversy surrounds the meaning and interpretation of sec. 108.04 (10), Stats., which provides as follows:

"LABOR DISPUTE. An employe who has left (or partially or totally lost) his employment with an employing unit *because* of a strike or other bona fide labor dispute shall not be eligible for benefits from such (or any previous)

employer's account for any week in which such strike or other bona fide labor dispute is in active progress in the establishment in which he is or was employed." (Emphasis supplied.)

Our review here involves a question of law, first as to the meaning and construction of the statute and second, as to the application of the proper standard of causation to the undisputed facts of the case.

Our decisions have previously determined that whether certain undisputed facts constitute loss of employment because of a labor dispute presents a question of law.[1] In reviewing such a question of law, this court does defer to a certain extent to the legal construction and application of a statute by the agency charged with enforcement of that statute.[2] We are further guided by the rule of review under which, as to questions of law, we will not reverse a determination made by the enforcing agency where such interpretation is one among several reasonable interpretations that can be made, equally consistent with the purpose of the statute.[3]

The first crucial question in this case is to settle on standards of causation for the unemployment of the five

[1] *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269 Wis. 394, 404, 69 N. W. 2d 573, 70 N. W. 2d 576. *See also: Mc-Graw-Edison Co. v. ILHR Dept.* (1974), 64 Wis. 2d 703, 709, 221 N. W. 2d 677, and *Milwaukee Transformer Co. v. Industrial Comm.* (1964), 22 Wis. 2d 502, 510, 126 N. W. 2d 6 (whether facts found constitute misconduct under sec. 108.04 (5), Stats., is question of law); *Fish v. White Equipment Sales & Service, Inc.* (1974), 64 Wis. 2d 737, 742, 221 N. W. 2d 864 (whether facts found constitute voluntary termination of employment under sec. 108.04 (7), Stats., is question of law).

[2] *Milwaukee Transformer Co. v. Industrial Comm., supra,* footnote 1, at page 510; *Cook v. Industrial Comm.* (1966), 31 Wis. 2d 232, 240, 142 N. W. 2d 827; *see also: Tecumseh Products Co. v. Wisconsin E. R. Board* (1964), 23 Wis. 2d 118, 126 N. W. 2d 520.

[3] *Milwaukee Transformer Co. v. Industrial Comm., supra,* footnote 1; *Tecumseh Products Co. v. Wisconsin E. R. Board, supra,* footnote 2.

applicants. We adopt the "but for" test in determining whether the lockout caused the unemployment of these five masons. Under this test an employee is disqualified under sec. 108.04 (10), Stats., only in those cases in which he would be working but for the existence of a bona fide labor dispute. This test is more consistent with the main statutory purpose of providing income support to unemployed workers[4] than a "substantial factor" test would be, and yet it does not defeat the purpose of seeing to it that the employer does not finance a labor dispute in which he is a principal.[5]

The "but for" test is the standard employed in other jurisdictions and is the test recommended by most commentators on this subject.[6] It is the test which has been employed by appeal tribunals within DILHR.[7]

Having determined the test to be applied in determining the cause of unemployment, we now pass to a consideration of the application of the "but for" test.

It is undisputed that there was work available in the Milwaukee area for these masons when they finished their temporary jobs in Racine. It is also conceded that the only factor which prevented these Milwaukee masons from taking up this Milwaukee-area work was the lockout of laborers by ACEA. From these two facts it fol-

---

[4] *Fish v. White Equipment Sales & Service, Inc., supra,* footnote 1, at page 746; *Milwaukee Transformer Co. v. Industrial Comm., supra,* footnote 1, at page 511.

[5] *Marathon Electric Mfg. Corp. v. Industrial Comm., supra,* footnote 1, at page 408.

[6] *See, for example:* Jerre S. Williams, *The Labor Dispute Disqualification—A Primer and Some Problems* (1955), 8 Vand. L. Rev. 338 at 344; Milton I. Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification* (1950), 17 U. Chi. L. Rev. 294 at 313, 315.

[7] *See, for example:* 1960 Digest of Wisconsin Unemployment Compensation Cases, LD–580, *Unemployment Due to Labor Dispute,* 176 at 177, Case 38–A–561, where it was decided that a worker was ineligible for benefits because "there would have been work available for him but for the strike."

lows as a matter of law that these five masons would have been working but for the existence of the lockout. They were thus unemployed during the time prior to the September 6th resumption of work "because of" a *bona fide* labor dispute and so were ineligible for benefits during this period.

The claimants seek to avoid this conclusion by contending that they first lost their employment because of the low demand for mason work in Racine during the summer of 1968. Put another way, these five masons assert that, but for this lack of work, they would have been working in Racine during this time. But this reasoning is only superficially persuasive, and must ultimately be rejected, in light of two factors peculiar to this case. The first is the nature of employment in the construction industry. As the trial court noted, employment in this industry involves a succession of temporary projects, with the workers finishing one job and moving on to another project where work is available. The second factor is that these claimants are all Milwaukee-area masons, and their presence in the Racine area was temporary. For example, Kerber was in the Racine area only in order to set a particular type of stone and would presumably have returned to the Milwaukee area immediately after completing this special project. So also, Esche and Drichta ended up working for a brief time in the Racine area solely as a stopgap measure because they were out of work in Milwaukee.

Thus, when these Milwaukee-area masons completed what work there was in the Racine area, they would naturally look first to the Milwaukee area, both because that was their regular area of employment and because that was where work was available. Because of the labor dispute, however, they could not take up this work, and thus, at this point, they became unemployed because of a labor dispute. In other words, unavailability of work in the Racine area cannot in this case be regarded as a

relevant causative factor when there was other work available in these claimants' regular place of employment.

As we noted at length in *Cook v. Industrial Comm.*,[8] many efforts have been made to bring about a legislative change in sec. 108.04 (10), Stats., which would allow benefits to nonparticipants in bona fide labor disputes. By the failure of the legislature to adopt these proposals, it has indicated approval of the construction placed on the labor dispute provision by the administrative agency charged with the enforcement of the Wisconsin Unemployment Compensation Act. The interpretation is that an employee is not eligible for unemployment compensation if he has lost his employment due to a bona fide labor dispute involving other employees of the same employer. In addition, sec. 108.04 (10), as a disqualifying statute, does not contain an exemption for workers who lose their jobs because of a lockout, as do the statutes of many states. In *A. J. Sweet, Inc. v. Industrial Comm.*[9] this court construed the phrase "bona fide labor dispute" to include a lockout. The net effect of the interpretation of sec. 108.04 (10) required by its plain language (and made in *Cook* and *Sweet*) is that employees, like these masons, who are not working because other employees have been locked out are denied unemployment compensation.

The analogous statute of our sister state of Minnesota takes a different approach to this situation. Sec. 268.09 (1) (5) of the Minnesota Statutes provides, as does sec. 108.04 (10) of the Wisconsin Statutes, that an employee is disqualified if he has left or partially or totally lost his employment because of a strike or other labor dispute. However, this subdivision specifically exempts an employee "who becomes unemployed because of a lockout." In addition, this subdivision provides that, if the disquali-

---

[8] *Supra,* footnote 2.

[9] (1962), 16 Wis. 2d 98, 114 N. W. 2d 141, rehearing denied 16 Wis. 2d at 110a, 114 N. W. 2d 853.

fication applies, it lasts for only one week "for any employee who is not participating in or directly interested in the labor dispute." Such an approach allows employees who have not chosen to strike and employees who are not directly involved in a labor dispute to share in the benefits of unemployment compensation. This statutory approach remains consistent with the public policy of allowing benefits to those who are out of work through no choice or fault of their own.

Given the present wording of sec. 108.04 (10), Stats., however, these applicants were correctly denied unemployment compensation. First, there was no challenge made on appeal to the bona fides of the lockout.[10] Second, there is no question but that these employees lost their employment because of their dependence upon the locked-out employees rather than because of economic reasons or because of a strategic decision by the employer to shut down all production.[11]

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J. *(dissenting).* The five Milwaukee area bricklayers here appealing lost their employment in Racine and were denied unemployment compensation benefits.[1] The basis of this denial was that they belonged to a Milwaukee area union local. If they had belonged to a Racine area union local their unemployment compensation benefits would have been granted. The only reason given for this distinction is that because of a laborers' union strike, bricklayers had been locked out on construction jobs in Milwaukee, Wash-

---

[10] *A. J. Sweet, Inc. v. Industrial Comm., supra,* footnote 9.

[11] *Cook v. Industrial Comm., supra,* footnote 2; *Kansas City Star Co. v. ILHR Dept.* (1973), 60 Wis. 2d 591, 211 N. W. 2d 488, rehearing denied (1974), 62 Wis. 2d 783, 217 N. W. 2d 666.

[1] Under ch. 108, UNEMPLOYMENT RESERVES AND COMPENSATION, Stats.

ington, Waukesha and Ozaukee counties. This bizarre result, it is claimed, is required by the statute providing:

"LABOR DISPUTE. An employe who has left (or partially or totally *lost) his employment* with an employing unit *because* of a strike or other bona fide labor dispute shall not be eligible for benefits from such (or any previous) employer's account for any week in which such strike or other bona fide labor dispute is in active progress *in the establishment* in which he is or was employed."[2] (Emphasis supplied.)

Adopting the "but for" test[3] as to eligibility for benefits, the majority states that, having "completed what work there was in the Racine area," the five members of the Milwaukee bricklayers' union "would naturally look first to the Milwaukee area" for a new job assignment. (With no work available in the Racine area, the Racine-based bricklayers might well be expected to do the same.) And, the majority concludes: "Because of the labor dispute, however, they could not take up this work, and thus, *at this point,* they became unemployed because of a labor dispute." (Emphasis supplied.) The writer submits that, at an earlier point in time, to wit, when they were laid off at the Racine job sites because there was no more work for them to do, the five bricklayers here had ceased working and had become unemployed. For under the "but for" test, as one authority has noted, "The work stoppage 'exists because of a labor dispute'

[2] Sec. 108.04 (10), Stats.

[3] For statement of this rule, *see:* Jerre S. Williams, *The Labor Dispute Disqualification—A Primer and Some Problems,* 8 Vanderbilt L. Rev. (1955), 338, 344, the author stating: ". . . it is now generally accepted in most jurisdictions that the requisite causal relationship between the stoppage of work and labor dispute is a 'but for' relationship. This means that the employee is disqualified only in those cases in which he would be working 'but for' the existence of the labor dispute."

only if it would not have existed but for that dispute."[4] In this case what the author terms the "work stoppage" and what our labor dispute statute terms "lost his employment" took place in Racine when these five bricklayers finished the projects on which they had been working and were laid off for the sole reason that there was no more work for them to do in Racine county.

The approach taken by the majority blurs the distinction between the reason for the initial layoff in Racine and the subsequent inability to secure a new job assignment in the Milwaukee area. The statute does not. The labor dispute section applies only to an employee who has "lost his employment" with an employing unit "because of a strike or other bona fide labor dispute." The unemployment compensation statute also requires a laid-off employee to "report for work actually available" when by due notice called upon so to do "by his current employing unit," or he will become ineligible for benefits.[5] But such employee duty to report to a new job assignment when an earlier job assignment has ended does not reach back to change the status of an employee who has been laid off solely because there was no more work for him to do on the job to which he was assigned. Where an employee goes off the employer's payroll, solely because there is no further need for his services on the job that he has completed, he does not lose his eligibility for unemployment benefits because a new job assignment in another county is not available because of a lockout in such other county.

---

[4] Milton I. Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification,* 17 U. Chi. L. Rev. (1949), 294, 313, the author also stating: "Denial of compensation for any week depends on the additional finding that the stoppage [of work] exists because of the dispute during that week."

[5] Sec. 108.04 (1) (a) and (2) (a), Stats., dealing with eligibility for benefits and requirements as to registering and reporting for work actually available.

Even if the lockout in Milwaukee could be made the cause of the layoff or loss of employment in Racine, and even if sec. 108.04 (10), Stats., could be thus made applicable, the denial of benefits here would encounter the "in the establishment" limitation of such section. Not every layoff occasioned by strike or lockout comes within the section.[6] The section operates to bar recovery of benefits only where the strike or labor dispute takes place in the particular "establishment" in which the particular employee is or was employed.[7] In determining whether a particular strike is in the particular "establishment" in which the particular laid-off employee is employed, our court has held that three factors are to be considered and weighed: (1) functional integrality; (2) general unity; and (3) physical proximity.[8]

Thus where ground employees of Northwest Airlines were laid off because of a nationwide pilots' strike, our court held that the ticket sellers and airport ground crews were entitled to unemployment compensation benefits. There was no dispute that the strike caused the lay-

[6] *See: Schaeffer v. Industrial Comm.* (1960), 11 Wis. 2d 358, 364, 105 N. W. 2d 762, this court stating: "We are of the opinion that the legislature must have had something in mind besides mere interdependence of production when it employed the term 'establishment,' in enacting sec. 108.04 (10), Stats. This is because it is difficult to visualize a situation where a strike in one plant will result in the closing down of another plant of the same employer except where there is interdependence of production. Therefore, if the legislature had intended that in all such cases of closing down, because of a strike or labor dispute involving a particular employer, an employee should be barred from unemployment compensation, there would have been no necessity for limiting the location of the strike, or labor dispute, to the particular 'establishment' in which he is or was employed.' "

[7] *Abendroth v. ILHR Department* (1975), 69 Wis. 2d 754, 758, 233 N. W. 2d 343.

[8] *Id.* at page 759.

off.[9] The two stations, one in Madison and one in Milwaukee, where the employees claiming benefits worked, were closed down.[10] The threefold test was applied. As to functional integrality,[11] the interdependency of the operations and locations was found to be present. As to the factor of physical proximity,[12] our court found a separateness between the work areas of the ground employees and the pilots' base of operations, relying on an earlier case holding truck terminals in this state not to be part of a single "establishment" with the main terminal in Chicago.[13] As to the factor of general unity,[14] our

[9] *Id.* at page 760, this court observing: "While the Milwaukee reservations facility did stay open 11 days after the pilots' strike began, there is not much point or purpose to selling tickets or maintaining ground crew services for an airline when the pilots are on strike and its planes are not flying."

[10] *Id.* at page 757 (statement of facts): "At the time of the strike Northwest operated two stations in Wisconsin, one at Madison and the other at Milwaukee. Both were intermediate stations —*i.e.*, 'a place where you land and take off to discharge and take on passengers.' Both these stations were closed as a result of the pilots' strike."

[11] *Id.* at page 759, this court holding, as to factor of functional integrality, ". . . this element relates to the degree of interdependency and synchronization between the operations and locations involved."

[12] *Id.* at page 760, this court holding, as to factor of physical proximity, ". . . we give weight not only to the actual mileage between the strikebound work area and the place of employment of the workers claiming benefits, but also to the reason for the separateness of the two locations."

[13] *Id.* at page 761, citing *Liberty Trucking Co. v. ILHR Department* (1973), 57 Wis. 2d 331, 204 N. W. 2d 457, and saying of it: "While the *Liberty* holding notes that there is 'no measuring stick' as to the significances of distances involved, it clearly reinstates the factor of physical proximity as one to be given considerable weight."

[14] *Id.* at page 762, as to factor of general unity, this court holding:
"This element, our court has held, '. . . involves a consideration of both unity of employment and unity of management, with the

court found no unity of employment, again citing and following the truck terminal case finding no unity of employment between truck terminals in this state and the main terminal in Chicago.[15]

Even if it could be said that these five bricklayers lost their jobs in Racine because of the lockout in Milwaukee, as did the airport employees when the pilots went on strike, the threefold test as to there being a single "establishment" would still have to be met. These bricklayers were not locked out from the Racine job because of the laborers' strike in Milwaukee. That lockout did not extend to or affect work done in Racine county. So, even with the cause of their unemployment found to be the lockout, we deal with "separated work areas or stations of a single employer." As to the first of the three factors in the test, *functional integrality*, the writer would not find, as to work done in Racine being linked to work not being done in Milwaukee, that "degree of interdependency and synchronization between the operations and locations involved,"[16] that would make them functionally integral. As to the second factor, *physical proximity*, while the distance between work areas involved is not here as great as the 88 miles in the truck terminal case,[17] the writer would find the work done in Racine not at all physically proximate to work in Milwaukee particularly insofar as the lockout is concerned. As to

former deserving more weight than the latter.' " (Quoting *Liberty Trucking Co. v. ILHR Department*, *supra*, footnote 13, at page 337.)

[15] *Id.* at page 762 (referring to the *Liberty Trucking Co. Case* at page 341):

"There our court concluded that: 'While the nature of the product, *i.e.*, transportation, and the nature of the business may make terminals a part of the whole system, it still does not make the terminals one "establishment." ' "

[16] *Id.* at page 759.

[17] *Id.* at page 761.

the third factor, *general unity,* the writer would find some unity of management, but no unity of employment, the completion of the construction in Racine being entirely separate and distinct from the undertaking or completing of work on Milwaukee construction projects. Finally, if airport ground crews can get unemployment benefits when they are laid off because of a pilots' strike, the writer would hold that bricklayers laid off in Racine where there was no lockout can receive unemployment benefits despite a lockout of bricklayers in Milwaukee county. The writer sees no reason to make fish out of one and fowl out of the other.

The writer would conclude that the five appellant bricklayers were laid off the job in Racine solely because that job had been completed and there was no more work for them in the Racine work area. The writer would hold that the lockout of bricklayers in Milwaukee, a lockout that did not extend to Racine county, did not make applicable sec. 108.04 (10), Stats. The writer would hold that, even if such statute could be stretched to be here applicable, these five bricklayers working in Racine were not in a single "establishment" of this employer as to work in the Milwaukee area covered by the lockout. The writer would reverse, holding that these five appellant bricklayers are entitled to unemployment compensation benefits, holding that "but for" there being no more work for them to do in Racine they would not have been laid off from their jobs in the Racine work area.

I am authorized to state that Mr. Justice ROLAND B. DAY joins in this dissent.