**TRANS WORLD AIRLINES, INC., Appellant,**

v.

**The LABOR AND INDUSTRIAL RELATIONS COMMISSION of Missouri,**

and

**Division of Employment Security**

and

**Graham Amerine, et al., Respondents.**

No. WD 32354.

Missouri Court of Appeals, Western District.

Jan. 12, 1982.

Stephen P. Dees and George E. Feldmiller, Kansas City, for appellant; Stinson, Mag & Fizzell, Kansas City, of counsel.

William F. Ringer, Jefferson City, for Labor and Indus. Relations Commission.

Rick V. Morris, Jefferson City, for Div. of Employment Security.

Doyle R. Pryor, Kansas City for Graham Amerine, et al., Jolley, Moran, Walsh, Hager & Gordon, Kansas City, of counsel.

Before TURNAGE, P. J., and PRITCHARD and KENNEDY, JJ.

TURNAGE, Presiding Judge.

Approximately 3,750 ground employees of TWA were found eligible for unemployment benefits by a deputy of the Division of Employment Security following a strike by the flight attendants on November 4, 1973. That decision was affirmed by an Appeals Tribunal and that decision, in turn, was adopted by the Labor and Industrial Relations Commission. On appeal to the circuit court, the decision was affirmed.

TWA contends the claimants were erroneously declared eligible because the Appeals Tribunal applied an erroneous rule of law. Reversed and remanded.

TWA is engaged in the transportation of persons and cargo by air. All of the claimants in this case are represented by District 142, International Association of Machinists and Aerospace Workers (IAM). Approximately 3,500 of the claimants are employed at seven facilities in and around Kansas City, and about 243 are employed in St. Louis. The claimants basically perform the ground functions necessary to TWA's operations. They include mechanics at both the overhaul base in Kansas City and on the flight lines in Kansas City and St. Louis. Mechanics on the flight line perform routine inspections, maintenance and necessary repairs on the planes as well as taxi planes between the terminal and either the overhaul base or maintenance hangar in St. Louis. The mechanics at the overhaul base perform major repairs, inspections and overhauls on TWA's planes as well as planes of other airlines. The ramp servicemen clean the inside and outside of the planes, load and unload baggage and stock drinks and supplies. In Kansas City these employees also deliver meals from the dining unit. Cargo is also handled by the ramp servicemen in delivering it to and from the planes. The dining unit employees work only in Kansas City and prepare meals to be served in-flight to passengers and crew.

Other claimants include those who worked at the Kansas City Administrative Center, the Jack Frye Training Center, the L–1011 Simulator and the St. Louis Reservations Office. These employees are primarily mechanics, store clerks and teletype operators.

On November 4, 1973, negotiations between TWA and its flight attendants had reached an impasse and the flight attendants called a strike to begin at 11:01 P.M. CST. Flight attendants work in the planes, both on the ground and in the air. They handle emergencies in the aircraft, instruct passengers in the use of safety equipment and serve food and beverages. The flight attendants are represented by the Transport Workers Union, which is separate and independent from the IAM.

In addition to the claimants and flight attendants being represented by different

unions, each group was employed under separate collective bargaining units. At the time the flight attendants were on strike there was no labor dispute or negotiations pending between TWA and IAM.

There was a dispute in the evidence as to whether or not the IAM had reached a decision on whether or not to instruct the employees represented by it not to cross any picket lines in the event the flight attendants went on strike. When the flight attendant's strike began, picket lines were placed at TWA's Kansas City Airport and Lambert Field facilities as well as most of the other locations of TWA operations. There was evidence that once the pickets appeared, claimants almost universally ceased reporting for work. In Kansas City, pickets appeared at Terminal B at 11:30 P.M., at the dining unit at about 11:10 P.M., at the air cargo facility sometime prior to 11:45 P.M. and at the overhaul base at 11:10 P.M. In St. Louis pickets appeared at the terminal about 11:10 P.M., at the air cargo building at 11:15 P.M. and at the maintenance hangar about midnight. At the overhaul base, which has the largest concentration of TWA employees, most of the employees scheduled to report for the 12:00 P.M. shift did not do so. There was evidence that IAM had circulated pamphlets stating that IAM would honor all picket lines, although those employees were not to do any actual picketing. There was evidence that during at least one prior strike by other employees of TWA, IAM members did not honor the other union's picket lines.

A few days before the strike, TWA, in anticipation of a strike by the flight attendants, handed out pink passes to allow certain employees access to its facilities during the strike. The passes were distributed only to personnel who were not members of IAM. There was evidence that at least one IAM employee who attempted to report to work after the strike began was denied admittance to the administrative center because he did not have a pink pass.

TWA took the position that it had planned to continue operations after the strike by using supervisory personnel, however, it had established a central committee to evaluate the situation and this committee, by utilizing information received from local committees, decided about 4:30 A.M., EST, on November 5, that it was impossible to continue operations because of its assessment that not enough of the claimants were reporting for work to enable operations to continue. There was evidence on behalf of the claimants that they were willing to work, but that TWA shut down operations so that no work was available. TWA introduced evidence that IAM members did refuse to cross the picket lines and various members informed their supervisors that they would not cross the picket lines. The claimants' position was that the union had the sole authority to decide if its members would cross the picket lines and as of the time TWA ceased operations no decision had been made as to whether or not the claimants would cross the picket lines.

Section 288.040, RSMo 1969, provides in part as follows:

"5. (1) A claimant shall be ineligible for waiting week credit or benefits for any week for which the deputy finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute in the factory, establishment or other premises in which he is or was last employed; ... and provided further, that this subsection shall not apply if it is shown to the satisfaction of the deputy that

"(a) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work, and

"(b) He does not belong to a grade or class of workers of which, immediately preceding the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute.

"(2) 'Stoppage of work' as used in this subsection means a substantial diminution of the activities, production or services at the establishment, plant, factory or premises of the employing unit."

The terms "factory, establishment or other premises" as used in the above section is not further defined in the statute. However, in *O'Dell v. Division of Employment Security*, 376 S.W.2d 137, 142[8] (Mo.1964) the court held such words signify the place, location or situs of the claimant's employment. The court applied the tests of functional integrality, physical proximity and general unity in determining whether the separate functions of the two plants involved in that case constituted the same factory, establishment or premises. The court discussed the facts of that case in relation to each of the three tests. The court concluded that the employees of Chevrolet Division were employed in the same factory, establishment or other premises as the striking Fisher Body employees under the application of facts to the three tests employed. There has been no departure from the three tests utilized in *O'Dell* by Missouri courts in determining whether or not striking and non-striking employees were employed in the same factory, establishment or other premises for the purpose of determining eligibility for unemployment compensation.

In this case the Appeals Tribunal held that the three tests in *O'Dell* were applicable only to cases involving manufacturing factories and that such tests were wholly inappropriate to apply in this case involving airline operations. In reaching that decision, the Tribunal relied upon *Park v. Appeal Board of Michigan Employ. Sec. Com'n*, 355 Mich. 103, 94 N.W.2d 407 (1959); *Northwest Airlines, Inc., v. Michigan Emp. Sec. App. Bd.*, 378 Mich. 119, 142 N.W.2d 649 (1966) and *McAnallen v. Michigan Employment Security Com'n*, 26 Mich.App. 621, 182 N.W.2d 753 (1970).

In *O'Dell* the court took note of the decision in *Park* and stated that *Park* had abandoned the functional integrality test. In *Northwest Airlines* the court followed *Park* and decided the case without regard to the functional integrality test. In *McAnallen* the court noted that the Michigan legislature had amended the statute to provide disqualification if the unemployment were due to a labor dispute in the establishment in which the claimant was last employed or in any other establishment operated by the same employing unit functionally integrated with the establishment in which he was employed. The court noted that it was not considering the functionally integrated clause of the amended statute because there was no contention that the employees in the non-dispute establishment were directly involved in the labor dispute. Thus, *McAnallen* was decided without any regard to the functionally integrated test.

After relying on the Michigan case, the Appeals Tribunal found that the place of employment of the flight attendants was in the airplanes as they flew from place to place, and since the claimants were employed at fixed ground locations there was no labor dispute at the place of employment of the claimants. The Tribunal therefore concluded that the claimants were not disqualified. The Tribunal stated that since the claimants' unemployment was not due to a stoppage of work by reason of a labor dispute in the factory, establishment or other premises in which they were last employed, it was not necessary to decide whether the claimants were participating in, or financing, or directly interested in the labor dispute which caused the work stoppage.

◼ The decision of the Commission in adopting the decision of the Appeals Tribunal is erroneous in two respects. First, the decision is erroneous because it rejects the three-pronged test utilized in *O'Dell*. The conclusion of the Tribunal that this test is not suitable for airline cases because that test was formulated for traditional factory cases, has some appeal but has not been universally followed. In *Abendroth v. Wis. Dept. of I., L. & H. Rel.*, 69 Wis.2d 754, 233 N.W.2d 343 (1975) the court utilized the three tests employed in *O'Dell* in deciding the eligibility of ground employees following a strike by the airline pilots. In *Alldredge v. Archie*, 93 Nev. 537, 569 P.2d 940 (1977) the court mentioned the test of functional integration and physical proximity in deciding eligibility of benefits for pilots be-

cause of a strike by ground personnel. Thus, the tests employed in *O'Dell* have been applied to airline cases.

■ This court concludes that in the absence of any further guidance on the question that the three tests employed in *O'Dell* should be applied to any case involving the question of whether employees are employed at the same or different factory, establishment or other premises. The Commission failed to follow the controlling law in this State when it refused to apply the tests in *O'Dell* to the facts in this case to determine whether or not the claimants and the flight attendants were employed in the same factory, establishment or other premises.

■ The Commission further erred when it adopted the decision of the Appeals Tribunal which held it was unnecessary to determine whether or not the claimants participated in or were directly interested in the labor dispute between TWA and the flight attendants. There was evidence that members of IAM refused to cross the flight attendants' picket lines. In *Meyer v. Industrial Commission of Missouri*, 240 Mo.App. 1022, 223 S.W.2d 835, 838[1] (1949) it was held that one who voluntarily refused to cross a picket line is participating in a work stoppage. The court held: "This is true regardless of the fact that he may not profit by the strike since by refusing to work he has added his strength to the cause of the strikers and placed them in a better bargaining position."

Even if the Commission decides, under the facts of this case, that the claimants are employed in a different factory, establishment or premises from the flight attendants, under *Meyer* the Commission must decide if the claimants refused to cross the picket lines and thereby became ineligible for benefits. Thus, the question the Commission found it did not have to answer does in fact require a finding of fact.

■ The order of the Commission is subject to review to determine whether it is authorized by law and whether it is supported by competent and substantial evidence upon the whole record. Missouri Constitution, Article V, Section 18; *Pulitzer Pub. Co. v. Labor & Ind. Relations*, 596 S.W.2d 413, 417[1, 2] (Mo. banc 1980).

In *Pulitzer* the court stated that a reviewing court is bound by the administrative determination if the evidence before that body would warrant either of two opposing findings. The scheme of administrative law is that the administrative body make findings of fact based on the evidence before it. Here the Commission has not made findings of fact under the correct rule of law as to whether the claimants were employed in the same factory, establishment or premises as the flight attendants. Further, the Commission has not made any findings of fact of whether or not the claimants refused to cross picket lines even if not employed at the same factory, establishment or premises. Before a court can perform a meaningful review in this case, the Commission must make findings of fact on these two issues.

The judgment of the circuit court is reversed and this cause is remanded with directions to that court to remand this proceeding to the Labor and Industrial Relations Commission with directions to make findings of fact on the two issues enumerated above, and to make its decision based on the facts so found. It is well to point out that this court does not mean by any statement in this opinion to indicate what facts the Commission should find.

There is no indication in the record as to why it has taken this long for this case to reach this court. However, it is to be hoped that future proceedings can move more quickly to resolve this dispute which has lingered now much too long.

All concur.