KENNETH F. SULLIVAN COMPANY, Appellant, v. INDUS-
TRIAL COMMISSION and others, Respondents.

*September 3—September 29, 1964.*

86

For the appellant there were briefs by *John H. Rouse* and *Jasper, Winner, Perina & Rouse,* all of Madison, and oral argument by *John H. Rouse.*

For the respondent Industrial Commission there was a brief and oral argument by *Arnold J. Spencer,* chief counsel of the unemployment compensation division.

For the other respondents there was a brief by *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *Richard M. Goldberg.*

WILKIE, J. The first and most crucial issue presented on this appeal is whether the respondents left or lost their employment because of a strike or other *bona fide* labor dispute in active progress at the establishment where they were last employed.

Employees are generally entitled to compensation for the time that they are unemployed. Sullivan's employees, the respondents, were laid off because of a lack of cement at the project sites. This lack of concrete, in turn, was caused by a strike of the supplier's truck drivers. The precise question is whether workers, who become unemployed due to a material shortage occasioned by a strike against another employer, are disqualified from benefits under sec. 108.04 (10), Stats. This court has never resolved this issue. Sec. 108.04 (10) provides:

*"Labor dispute.* An employe who has left (or partially or totally lost) his employment with an employing unit because of a strike or other bona fide labor dispute shall not be eligible for benefits from such (or any previous) employer's account for any week in which such strike or other bona fide labor dispute is in active progress in the establishment in which he is or was employed."

We must first consider whether there was a strike or labor dispute within the meaning of the statute. Appellant

relies on an early case which cites the then applicable stat-
ute defining "labor dispute" as including:

" '. . . any . . . controversy arising out of the respective
interests of employer and employee, regardless of whether
or not the disputants stand in the proximate relation of em-
ployer and employee.' " [1]

In contending that respondents were involved in a labor
dispute, appellant emphasizes the language deeming an em-
ployer-employee relationship unnecessary. Not only have
subsequent cases failed to allude to this definition, but a
later amendment to the statute considered in the early case
eliminated the "regardless of whether or not the disputants
stand in the proximate relation of employer and employee"
language.[2]

In recognizing that a purpose of the disqualifying section,
108.04 (10), was to prevent an employer from financing a
strike against himself, recent decisions have at least implied
that the employee [3] or the employer [4] must be directly in-
volved in the dispute. In the present case, Sullivan was not
in a controversy with anyone, nor were Sullivan's employees.

Another factor in determining whether there is a strike
or a labor dispute within the meaning of the statute is
whether the employer-employee relationship is severed. In
*Marathon Electric Mfg. Corp. v. Industrial Comm.,*[5] the
court concluded that:

". . . sec. 108.04 (10), Stats., should be construed as
only applicable to those persons still retaining an employee

---

[1] *Spielmann v. Industrial Comm.* (1940), 236 Wis. 240, 250, 295
N. W. 1, 6.

[2] Ch. 25, Laws of 1939.

[3] *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269
Wis. 394, 69 N. W. (2d) 573, 70 N. W. (2d) 576.

[4] *A. J. Sweet, Inc., v. Industrial Comm.* (1962), 16 Wis. (2d)
98, 114 N. W. (2d) 141, 114 N. W. (2d) 853.

[5] *Supra,* footnote 3, at page 407, 69 N. W. (2d) at 581. Later
cases include: *Rice Lake Creamery Co. v. Industrial Comm.* (1961),
15 Wis. (2d) 177, 112 N. W. (2d) 202; *Fredricks v. Industrial
Comm.* (1958), 4 Wis. (2d) 519, 91 N. W. (2d) 93.

status who are out of work due to a *bona fide* labor dispute; and as to such employees there is a complete suspension of benefits for the duration of the period that the dispute remains in active progress. If the employer during the progress of such dispute elects to terminate the employee status of any employee by discharging him, the possible liability of the employer's account for unemployment compensation benefits to such discharged employee is governed by the portions of sec. 108.04, other than sub. (10), applicable to cases of absolute termination of employment. . . .

"This construction of sec. 108.04 (10), Stats., is in keeping with the legislative policy underlying its enactment of protecting employers against having to finance a strike against themselves, as would be the case if their accounts were liable for the payment of unemployment compensation benefits to their employees while absent from work during the course of the dispute. The employer receives the full benefit of the protection of this subsection during the progress of the labor dispute so long as it does not take affirmative action to end the employee status of the employee. If it does elect to terminate such status during the progress of the labor dispute the reason for the affording of such protection disappears."

The respondents were laid off because of the lack of materials on the construction sites; such temporary suspension does not disqualify them under sec. 108.04 (10), Stats.

Appellant contends that because the Madison Trades Council, of which respondents' unions were members, supported the strike, the Teamsters' strike becomes the dispute of each individual union, and that therefore respondents are disqualified. Newspapers containing statements of the council's president were introduced to prove the council's participation. The flaw in this argument is apparent without considering the hearsay problem presented by the newspaper reports. The Teamsters local was not a member of the Madison Trades Council. It was not even invited to join until three weeks after the strike ended and was not

admitted until July 1st, almost two months after the strike was halted. The support of the council consisted of, at most, passive acquiescence. The Teamsters' strike could not be imputed to the other members of the Trades Council without a showing of more active co-operation.[6]

Under circumstances such as those in the instant case, it would be manifestly unfair to hold respondents accountable for another union's strike of a wholly different employer when the respondents had absolutely no connection with the strike. To disqualify an employee there must be more of a thread than is present here which connects the employer (in case of a lockout) or the employee (in case of a strike) with the controversy.

Because neither Sullivan nor the respondents were parties to a labor dispute within the meaning of sec. 108.04 (10), Stats., it is not necessary to consider whether or not the construction sites were "establishments" as contemplated by the provisions of that section.

A second issue presented on this appeal is whether the Industrial Commission erred in denying a rehearing at the request of appellant.

Appellant contends that after the hearing the labor representatives made statements reported in the Madison papers, which would cast doubt on the credibility of their testimony at the hearing. The statements were purportedly to the effect that the Madison Trades Council would support a new Teamsters' strike as it had the one in April. Appellant feels that as this was contrary to testimony at the hearing, a rehearing is warranted in the interests of justice. The taking of additional testimony on petition for review of an

---

[6] See *A. J. Sweet, Inc., v. Industrial Comm., supra,* footnote 4, where employers who belonged to an association locked out their employees when a member employer was struck. The association was enough to bring all the employers into the dispute, therefore disqualifying the employees from receiving benefits.

examiner's findings and order is a matter for the sole discretion of the commission.[7]

Aside from the obvious hearsay problem, the evidence is irrelevant. Newspaper reports to the effect that the council supported the strike were introduced at the original hearing. The council president testified that he was misquoted. The "new evidence" is identical to evidence already considered by the commission. There was no abuse of discretion in the commission's denial of the request for a new hearing.

*By the Court.*—Judgment affirmed.

---

[7] *Christnovich v. Industrial Comm.* (1950), 257 Wis. 235, 43 N. W. (2d) 21.