COOK and others, Appellants, v. INDUSTRIAL COMMISSION and another, Respondents.*
RADA and others, Appellants, v. SAME, Respondents.
BULLOCH and others, Appellants, v. SAME, Respondents.*
SERAK and others, Appellants, v. SAME, Respondents.

*May 10—June 7, 1966.*

* Motion for rehearing denied, without costs, on July 27, 1966.

236

For the appellants Cook and others there was a brief and oral argument by *Stephen J. Hajduch* of Milwaukee.

For the appellants Rada and others there was a brief by *Zubrensky, Padden, Graf & Bratt* of Milwaukee, and oral argument by *Herbert S. Bratt.*

For the appellants Bulloch and others there was a brief by *Eisenberg & Kletzke,* attorneys, and *Sydney M. Eisen-*

*berg* of counsel, all of Milwaukee, and oral argument by *Sydney M. Eisenberg.*

For the respondent Industrial Commission there was a brief and oral argument by *Arnold J. Spencer,* chief counsel of the unemployment compensation division.

For the respondent Ladish Company there was a brief by *Brady, Tyrrell & Bruce,* attorneys, and *E. J. Zarwell* and *John A. Hazelwood* of counsel, all of Milwaukee, and oral argument by *Mr. Zarwell.*

CURRIE, C. J.   The two issues presented by this appeal are:

(1)   Is there credible evidence to support the finding of fact made by the appeal tribunal and adopted by the Industrial Commission, that the plaintiffs lost their employment because of a strike by the machinists in the employer's establishment?

(2)   If there is sufficient evidence to sustain this finding, does sec. 108.04 (10), Stats., render plaintiffs ineligible for benefits where they were not parties to the labor dispute between the machinists' union and Ladish, and plaintiffs were willing and able to work during the machinists' strike if permitted to do so by Ladish?

## *Sufficiency of Evidence.*

The key finding of fact by the appeal tribunal which supports the ultimate fact found, that plaintiffs lost their employment because of the strike, is as follows:

"The employer's decision to suspend all production during the duration of the strike rather than attempting to replace the striking machinists was reasonable and justified."

In considering plaintiffs' contention that this finding is erroneous this court need only determine if "there is

any credible evidence which, if unexplained, would support the finding." [1]

Plaintiffs contend that the employer's decision to stop all production immediately at the commencement of the strike was unwarranted, and was, in reality, based on economic factors not related to the strike. They attempted to establish this fact at the hearing by presenting a number of witnesses who were Ladish employees, each one testifying that in his particular area of the plant there was sufficient unfinished work available for him and others in his department to continue during the strike of the machinists. However, this testimony was clearly refuted by Ladish's primary witness, John Foley, its manager of labor and industrial relations.

Mr. Foley's testimony demonstrated that the 1,800 striking machinists were an integral part of the plant operation from start to finish and that their strike effectively stopped plant operations. He pointed out that machinists perform the following functions in the plant:

(1) All nonelectrical maintenance and repair. Machinists are needed if a furnace burns out or if any number of tools or machines need repair. Approximately 475 machinists are in the repair shop alone and their necessity to plant operation is evident as the plant's self-destructing equipment needs some type of repair at least once per shift;

(2) Operate all interior transportation except that involved in the forging cycle;

(3) Inspect the forgings to insure they are satisfactory;

(4) Clean and straighten the forgings;

(5) Warehouse and handle the raw die blocks and perform needed sandblasting to their surfaces.

---

[1] *Liebmann Packing Co. v. Industrial Comm.* (1965), 27 Wis. (2d) 335, 338, 134 N. W. (2d) 458; *Carr v. Industrial Comm.* (1964), 25 Wis. (2d) 536, 538, 131 N. W. (2d) 328.

Ladish's other witness was Mr. Howard Thompson, general supervisor for the maintenance and storage departments. He pointed out that the maintenance department has 485 employees, represented in part by machinists, and that this department performs complete maintenance of all facilities at the plant. He testified that in the forge shop alone, down-time frequency as it pertained to the maintenance department occurred 25 to 38 times daily. It was Thompson's opinion that employees in other crafts in the plant could not do the maintenance work of the machine repairmen without some training.

Testimony presented by Ladish then clearly provides a credible basis on which the commission could make the finding it did.

*Interpretation of sec. 108.04(10), Stats.*

Sec. 108.04 (10), Stats., provides:

"An employe who has left (or partially or totally lost) his employment with an employing unit because of a strike or other bona fide labor dispute shall not be eligible for benefits from such (or any previous) employer's account for any week in which such strike or other bona fide labor dispute is in active progress in the establishment in which he is or was employed."

Plaintiffs contend that sec. 108.04 (10), Stats., does not apply to them because they were not striking employees, did not support the strike, and were ready and willing to go to work. However, the statute is not limited to an employee who "left" his employment because of a strike or other *bona fide* labor dispute, but also includes an employee who *lost* his employment due to such cause. To restrictively interpret the statute as plaintiffs request would render superfluous the statutory words "or partially or totally lost." This is ordinarily to be avoided

under the cardinal rule of statutory interpretation that statutes should be so construed that no word or clause shall be rendered surplusage.[2]

Furthermore, the construction and interpretation of a statute adopted by the administrative agency charged with the duty of applying the law is entitled to great weight.[3] In the instant case the commission appears as a respondent and interprets sec. 108.04 (10), Stats., to include appellants within its purview. Additionally, two commission decisions should be noted which considered claims under sec. 108.04 (10) by office workers in a manufacturing plant and various airline workers who lost their employment because of a strike by others against their employers. In both decisions a commission examiner acting as the appeal tribunal found that the workers "lost" their employment because of a strike within the meaning of sec. 108.04 (10).[4]

The cases of *Spielmann v. Industrial Comm.*[5] and *Schaeffer v. Industrial Comm.*[6] supply further evidence that the commission has consistently for a considerable period of time interpreted the statute as denying benefits to employees who lose their employment because of a

[2] *Wilmot Union High School Dist. v. Rothwell* (1965), 27 Wis. (2d) 228, 235, 133 N. W. (2d) 782; *Greenebaum v. Department of Taxation* (1957), 1 Wis. (2d) 234, 238, 83 N. W. (2d) 682; *Worachek v. Stephenson Town School Dist.* (1955), 270 Wis. 116, 122, 70 N. W. (2d) 657; *State v. Columbian National Life Ins. Co.* (1910), 141 Wis. 557, 566, 124 N. W. 502; 82 C. J. S., Statutes, p. 712, sec. 346.

[3] *Mednis v. Industrial Comm.* (1965), 27 Wis. (2d) 439, 444, 134 N. W. (2d) 416; *Trczyniewski v. Milwaukee* (1961), 15 Wis. (2d) 236, 240, 112 N. W. (2d) 725; *Wisconsin Axle Division v. Industrial Comm.* (1953), 263 Wis. 529, 537b, 57 N. W. (2d) 696, 60 N. W. (2d) 383.

[4] *Olson v. United States Rubber Co.* (1959), Case No. 59–A–2374; *Reuter v. Northwest Airlines, Inc.* (1961), Case No. 61–A–1163.

[5] (1940), 236 Wis. 240, 295 N. W. 1.

[6] (1960), 11 Wis. (2d) 358, 105 N. W. (2d) 762.

strike even though they are not parties to the strike. In both *Spielmann* and *Schaeffer* the nonstriking employee-claimants were employed in a plant of their employer located some considerable distance from another plant hit by a strike which forced operations to be suspended in the plant in which the claimants worked. The commission denied benefits in both cases on the ground that the plant where the strike was in progress and the plant where the claimants worked were part of the same "establishment." Whether the two plants constituted one establishment would have been wholly immaterial if the nonstriking employees were otherwise eligible for benefits. Significantly, the plaintiff employees in those two cases did not contend in this court that they were entitled to benefits on the theory advanced now by the instant plaintiffs.

The circuit court for Dane county has by a decision and judgment entered in 1959 in the case of *Honkamp v. Industrial Comm. and Consolidated Water Power & Paper Co.* specifically upheld the commission's interpretation of sec. 108.04 (10), Stats. In that action the plaintiff nonstriking employees were employed in the same plants as the striking employees. Judge BARDWELL in his memorandum decision of November 12, 1959, stated:

"Plaintiffs' counsel argues that because these workers in no way supported the strike called by the papermakers union and in fact did everything they could, even to the extent of crossing picket lines, in order to stay on the job, they should not be denied benefits under the Act. Perhaps there may be merit to this argument but if so it should be addressed to the legislature rather than the court, as the statute, 108.04 (10), clearly by its terms denies benefits in such cases. . . .

"In the Honkamp, et al., situation there was obviously a strike in progress at the various establishments where the plaintiffs were working and therefore the Commission quite properly denied benefits to these plaintiffs in conformity with the statute."

The *Honkamp Case* was a companion case in circuit court to that of *Schaeffer v. Industrial Comm.*,[7] and the two cases were heard together and a single memorandum opinion was rendered by Judge BARDWELL. It is interesting to note that, although the same experienced counsel represented both sets of plaintiffs, an appeal was not taken to this court from the *Honkamp Case* circuit court judgment.

In the twelve biennial sessions of the Wisconsin legislature since the *Spielmann Case*[8] was decided in 1940, no substantive changes have been made in sec. 108.04 (10), Stats. Unsuccessful attempts have been made to exempt from the labor dispute disqualification provision those individuals who lose their employment because of a strike or other *bona fide* dispute but who are not participating in, financing, or directly interested in the dispute. The following bills were introduced at various times in the legislature and all were indefinitely postponed.

In 1949 Bill No. 294, A., was introduced, by which it was proposed to add the following language to sec. 108.04 (10), Stats.:

"Provided, that this section shall not apply if it is shown that he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and he does not belong to a grade or class of workers of which immediately before the commencement of the stoppage there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute."

In 1951 the same bill was introduced. It was Bill No. 437, A.

Again in 1953 Bill No. 391, S., proposed to add the same language as set forth above in Bill No. 294, A., of 1949.

[7] Ibid.
[8] *Supra,* footnote 5.

In 1957, Bill No. 497, A., proposed to add the following language to sec. 108.04 (10), Stats.:

"Such ineligibility shall apply only to the members of the local labor organization which initiated the strike or labor dispute and not to the members of other local labor organizations, the members of which are unemployed because of the strike."

In many state unemployment compensation laws, adopted after sec. 108.04 (10), Stats., individuals are excluded from the disqualification provision in case of unemployment due to a strike or labor dispute or stoppage of work due to a labor dispute, if neither they nor any of the same grade or class of workers are participating in, financing, or directly interested in the dispute.

It is clear that the bills presented to the legislature have attempted to modify the Wisconsin labor dispute provision to allow the payment of benefits to nonparticipants, which would result in a provision similar to those in many other state laws. The legislature, however, has not agreed to change the Wisconsin labor dispute provision to allow nonparticipants to be eligible for benefits. By failing to pass the bills attempting to allow benefits to nonparticipants, the legislature has actively indicated that it approved the construction placed on the labor dispute provision by the administrative agency charged with enforcement of the Wisconsin Unemployment Compensation Act.

Although decisions from other jurisdictions are not particularly helpful in this type of case, attention is called to two decisions rendered by Ohio courts which considered a statute almost identical to sec. 108.04 (10), Stats., and reached the same result as did the Dane county circuit court in the *Honkamp Case*.[9]

---

[9] *Cornell v. Bailey* (1955), 163 Ohio St. 50, 55, 58, 125 N. E. (2d) 323; *Allen v. Youngstown R. Co.* (1954), 72 Ohio L. Abs. 35, 134 N. E. (2d) 80. The Ohio statute considered by these cases

Appellants cite the recent case of *Kenneth F. Sullivan
Co. v. Industrial Comm.*[10] as supporting their position.
In that case the employer was forced to lay off con-
struction workers because ready-mix cement truck
drivers were on strike with their employers and failed
to deliver cement which was a necessary ingredient of
the construction work. None of the claimants were
members of the union which represented the striking
truck drivers and Sullivan had no contract with that
union. Claimants contended they were entitled to
unemployment benefits while the employer contended
that under sec. 108.04 (10), Stats., they were not eligible
for benefits because they lost their employment "because
of" a labor dispute. However, the commission and this
court held that claimants did not lose their employment
because of a labor dispute within the meaning of sec.
108.04 (10), and hence were eligible for benefits. This
court said:

"In recognizing that a purpose of the disqualifying
section, 108.04 (10), was to prevent an employer from
financing a strike against himself, recent decisions have
at least implied that the employee or the employer must
be directly involved in the dispute. In the present case,
Sullivan was not in a controversy with anyone, nor were
Sullivan's employees. . . .
"Because neither Sullivan nor the respondents were
parties to a labor dispute within the meaning of sec.
108.04 (10), Stats., it is not necessary to consider
whether or not the construction sites were 'establish-
ments' as contemplated by the provisions of that sec-
tion."[11]

Appellants contend the instant case is analogous and
the same result should obtain. However, the instant case

was sec. 4141.29 (C) (2) Rev. Code. This statute is not presently
in the Code, but has apparently been replaced by sec. 4141.29 (D)
(1) (a), which presents different wording but does not appear to
have made a substantive change for purposes of this case.

[10] (1964), 25 Wis. (2d) 84, 130 N. W. (2d) 194.
[11] Id. at 25 Wis. (2d) 88, 90.

is clearly distinguishable in that the employer Ladish Company was involved in a labor dispute with its employees. The court in *Sullivan* clearly indicated that only where *neither* the employer nor the claimants were parties to a labor dispute was sec. 108.04 (10), Stats., inapplicable. Accordingly, that case supports the commission's instant determination as confirmed by the circuit court.

We conclude that the plain wording of sec. 108.04 (10), Stats., the administrative interpretation thereof, and the legislative history which has transpired since the decision of the *Spielmann Case,* all require that plaintiffs be denied benefits during the period of the machinists' strike.

*By the Court.*—Judgment affirmed.