Orval V. JENKS, Jr., individually and as President of Local 1509 of the International Brotherhood of Boilermakers, Iron Ship Builders and Blacksmiths, and its members; Thomas B. Widor, individually and as President of Local 92 of The International Federation of Professional and Technical Engineers, and its members; Ronald Blawat, individually and as President of Local 140 of The International Die Sinker Conference and Milwaukee Die Sinkers, and its members; Don Pradarelli, individually and as President of Local 85 of The Office and Professional Employees International Union, and its members; and Robert Allen Hagen, individually and as Chairman of Local 125 of The International Brotherhood of Firemen and Oilers, and its members, Plaintiffs-Appellants.

v.

WISCONSIN DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS; The Labor & Industry Review Commission of the State of Wisconsin, and Ladish Company, a corporation, Defendants-Respondents.†

Court of Appeals

*No. 81–1540. Submitted on briefs March 18, 1982.—Decided May 25, 1982.*

(Also reported in 321 N.W.2d 347.)

† Petition to review denied. ABRAHAMSON, J., took no part.

For the plaintiffs-appellants the cause was submitted on the brief of *Stephen J. Hajduch* and *John A. Udovc*, of Milwaukee.

For the defendant-respondent Ladish Company the cause was submitted on the brief of *Quarles & Brady* by *Elwin J. Zarwell* and *Mary Pat Koesterer*, of Milwaukee.

For the defendants-respondents Wisconsin Department of Industry, Labor and Human Relations and The Labor and Industry Review Commission of the State of Wisconsin the cause was submitted on the brief of *Floyd F. Tefft*, Labor and Industry Review Commission.

A brief was filed by *Bronson C. La Follette,* attorney general, and *David C. Rice,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Randa, J.

MOSER, P.J. This is an appeal from an order which affirmed a decision of The Labor and Industry Review Commission of the State of Wisconsin (LIRC) denying unemployment compensation benefits to the officers and members of five nonstriking unions (the nonstriking workers) that had labor contracts with Ladish Company (Ladish). The trial court dismissed the complaint of the nonstriking workers on the ground that there was substantial evidence in the record to support LIRC's determination that the nonstriking workers were not entitled to unemployment compensation under sec. 108.-04(10), Stats.[1] The trial court further determined that sec. 108.04(10) was constitutional. We affirm.

On or about April 11, 1979, the machinsts' union commenced a legal strike at the Ladish plant in Cudahy. Ladish immediately notified members of four of the nonstriking unions that they would be laid off because the machinists were so integrated into the overall operation of the plant that the manufacturing process could not be carried on. The members of The International Brotherhood of Firemen and Oilers were not laid off, but refused to cross the machinists' picket line. The strike lasted approximately five months.

The nonstriking workers, including members of the

---

[1] Sec. 108.04(10), Stats., provides:

(10) Labor Dispute. An employe who has left (or partially or totally lost) his employment with an employing unit because of a strike or other bona fide labor dispute shall not be eligible for benefits from such (or any previous) employer's account for any week in which such strike or other bona fide labor dispute is in active progress in the establishment in which he is or was employed.

firemen and oilers' union, applied for and were denied unemployment compensation. A Wisconsin Department of Industry, Labor and Human Relations (DILHR) deputy initially determined that each claimant "left or lost his/her employment with Ladish because of a strike or other bonafide [sic] labor dispute in active progress in the establishment in which he/she is or was employed." The deputy concluded that under sec. 108.04 (10), Stats., each claimant was ineligible for benefits while the strike was in active progress.

The nonstriking workers appealed the denial of benefits to a DILHR appeal tribunal on a stipulated statement of facts which provided in part:

> The same manufacturing facilities and essentially the same processes, relationships, operations and other facts found and considered in the determination of the Supreme Court of the State of Wisconsin in *Cook v. Industrial Comm.*, 31 Wis. 2d 232; 142 N.W.2d 827 (1966) are the subject of this proceeding and may be considered to be present and to exist for the purpose of this proceeding except only as expressly modified by this stipulation.

On this appeal, the workers challenged both the deputy's findings and the constitutionality of sec. 108.04(10), Stats.

The appeal tribunal affirmed the deputy's initial determination. It found that it had no jurisdiction to entertain constitutional challenges to statutes. It rejected the argument that the workers were not striking employees and should not be made to suffer because of a labor dispute outside their respective union contract. The tribunal noted, citing *Cook v. Industrial Commission*,[2] that it has been consistently held that under sec. 108.04(10), Stats., nonstriking employees who lose their employment due to a strike by another union in the

---

[2] 31 Wis. 2d 232, 239–42, 142 N.W.2d 827, 831–32 (1966).

establishment in which they are employed are ineligible for benefits even though they do not support the strike. The tribunal also rejected the contention that the phrase in sec. 108.04(10), "establishment in which they are employed" includes only the contract under which they are employed and excludes other union contracts. The tribunal reasoned that the statutory language did not refer to union contracts but to the place of employment, that is, Ladish's Cudahy plant.

The nonstriking workers appealed the appeal tribunal's decision to LIRC. In a decision dated August 4, 1980, the majority determined that the tribunal's findings of fact and conclusions of law were supported by the record and that the workers were ineligible for benefits for any week in which the strike or bona fide labor dispute was in active progress in the establishment in which the worker is or was employed. One commissioner dissented, concluding that Ladish locked out the nonstriking union employees as a pressure tactic, and that the members of the firemen and oilers' union were simply exercising an unquestioned right to refuse to cross a picket line.

The workers sought review of LIRC's denial of benefits in Milwaukee county circuit court. In their complaint against DILHR, LIRC, Ladish and the attorney general,[3] the workers alleged two causes of action: (1) that they were locked out by Ladish and that sec. 108.04 (10), Stats., was unconstitutional, and (2) that Ladish breached the workers' labor agreements by locking out the workers.

Pursuant to motions by Ladish, the circuit court, in a memorandum decision rendered on December 8, 1980,

---

[3] On July 14, 1981, the circuit court granted the attorney general's motion to dismiss him as a party. The attorney general reserved the right to appear in this matter concerning the constitutionality of sec. 108.04(10), Stats., and has filed a brief in this appeal.

and reduced to an order on December 16, 1980, struck the "lockout" language of the complaint and dismissed the cause of action for breach of labor contract. The circuit court pointed out that the stipulation before the appeal tribunal and the LIRC included "all facts founded [sic] and considered in *Cook*" and is binding on the parties. The circuit court determined that the LIRC could find that no lockout occurred based on that stipulation alone. The circuit court dismissed the breach of labor contract action without prejudice on the basis that it was a collateral attack on an appeal from an administrative agency decision.[4] The court found that the breach of labor contract action could be maintained as a separate suit but could not be part of an appeal from an administrative ruling.

The circuit court heard the matter on July 13, 1981. In a bench decision, the circuit court ruled that there was substantial evidence to support LIRC's denial of benefits. The court pointed out that the stipulation alone, would justify this conclusion. The circuit court further determined that the nonstriking workers failed to meet the heavy burden of showing that sec. 108.04(10), Stats., is unconstitutional and that there is a rational basis for the classification established. In an order signed and entered on July 24, 1979, the circuit court affirmed the decision of the LIRC and dismissed the complaint on the merits.

This appeal raises two issues: (1) whether LIRC erred when it found that the nonstriking workers left or lost their employment because of a strike or bona fide labor dispute in active progress in the establishment in which they were employed and denied benefits pursuant to sec. 108.04(10), Stats., and (2) whether the denial of unemployment compensation benefits to non-

---

[4] *See Borello v. Industrial Comm'n*, 26 Wis. 2d 62, 66, 131 N.W. 2d 847, 849 (1965).

striking employees violates the constitutional guarantee of equal protection of the laws.

## LIRC FINDINGS AND CONCLUSIONS

An aggrieved party may obtain judicial review of LIRC determinations,[5] but the reviewing court may not substitute its judgment for that of the LIRC as to the weight or credibility on any finding of fact.[6] Findings of fact by an administrative tribunal such as LIRC are conclusive if supported by substantial credible evidence.[7] Substantial evidence is not a preponderance of evidence; the test is whether reasonable minds could arrive at the same conclusion as reached by LIRC.[8] A LIRC determination will not be overturned simply because it is against the great weight and clear preponderance of the evidence.[9]

A reviewing court is not bound by LIRC's determinations on questions of law, but will sustain LIRC's view if reasonable.[10] The construction and interpretation of a statute adopted by an agency assigned the duty of applying the law is entitled to great weight.[11]

The nonstriking workers argue initially that their layoff by Ladish constituted a lockout in violation of their collective bargaining agreements and that sec. 108.04 (10), Stats., does not apply to such situations. This

[5] Sec. 108.09 (7) (a), Stats.

[6] *Farmers Mill v. DILHR*, 97 Wis. 2d 576, 579, 294 N.W.2d 39, 41 (Ct. App. 1980); sec. 102.23 (6), Stats.

[7] *Farmers Mill, supra*, note 6, at 579, 294 N.W.2d at 41; *RTE Corp. v. DILHR*, 88 Wis. 2d 283, 288, 276 N.W.2d 290, 293 (1979); secs. 102.23 (1) and 102.23 (6), Stats.

[8] *Farmers Mill, supra* note 6, at 579, 294 N.W.2d at 41.

[9] *Hamilton v. DILHR*, 94 Wis. 2d 611, 617, 288 N.W.2d 857, 860 (1980).

[10] *Farmers Mill, supra* note 6, at 580, 294 N.W.2d at 41.

[11] *Cook, supra* note 2, at 240, 142 N.W.2d at 831.

contention is without merit. Both LIRC and the trial court concluded that the stipulation between the parties foreclosed any finding of a lockout. We agree.

The stipulation provided in pertinent part that "[t]he same manufacturing facilities . . . processes, relationships, operations and other facts found and considered in . . . *Cook* . . . are the subject of this proceeding and may be considered to be present and to exist for the purpose of this proceeding . . . ." In *Cook*,[12] the Wisconsin Supreme Court determined that there was sufficient evidence to provide a credible basis for the appeal tribunal to make the finding that the nonstriking Ladish employees "lost" their employment because of a strike.[13] In addition, the stipulation repeatedly characterized the status of the nonstriking workers as "laid off." We conclude that LIRC's findings that the nonstriking workers were "laid off" rather than "locked out" is supported by substantial evidence and must be upheld.

The nonstriking workers also contend that sec. 108.04 (10), Stats., does not apply to deny them unemployment compensation benefits because they work under separate union contracts and there is nothing to connect them with a strike or bona fide labor dispute. The workers also suggest that if sec. 108.04(10) is construed to apply to them, the public policy declaration contained in sec. 108.01 will be frustrated. We reject these contentions.

LIRC's denial of benefits to the nonstrikers is supported by several decisions of the Wisconsin Supreme Court.[14] In *Cook*,[15] the supreme court analyzed sec.

---

[12] Note 2, *supra*.

[13] *Id.* at 237–39, 142 N.W.2d at 830.

[14] *See De Leeuw v. DILHR*, 71 Wis. 2d 446, 238 N.W.2d 706 (1976); *Cook, supra* note 2; *Spielmann v. Industrial Comm'n*, 236 Wis. 240, 295 N.W. 1 (1940). *See also Kenneth F. Sullivan Co. v.*

108.04(10), Stats., under the rule of statutory construction which provides that statutes should be so construed that no word shall be rendered surplusage, and concluded that the plain meaning of the statute required an interpretation that those employees laid off because of a legal strike in the establishment in which they were employed could not receive unemployment compensation during the period of the strike.[16] The supreme court also pointed out that between its 1940 decision in *Spielmann v. Industrial Commission,*[17] and the decision in *Cook,* the legislature had rejected a number of attempts to change the statute so as to provide benefits to nonstriking laid-off workers.[18] The court concluded that the legislative history of sec. 108.-04(10) indicated that the legislature approved of the scheme that denies unemployment benefits to workers laid off because of a strike in their workplace.[19]

We note that since the decision in *Cook,* the legislature has rejected similar amendments to sec. 108.04 (10), Stats.[20] It follows that the legislature is still satisfied with LIRC's interpretation of sec. 108.04(10).

██

In view of the supreme court's decision in *Cook,* we have no recourse but to affirm LIRC's conclusion that the nonstriking workers were ineligible for benefits while the machinists' strike was in active progress.

---

*Industrial Comm'n,* 25 Wis. 2d 84, 130 N.W.2d 194 (1964); *Schaeffer v. Industrial Comm'n,* 11 Wis. 2d 358, 105 N.W.2d 762 (1960); *Marathon Elec. Mfg. Corp. v. Industrial Comm'n,* 269 Wis. 394, 69 N.W.2d 573 (1955).

[15] Note 2, *supra.*

[16] *Id.* at 239–45, 142 N.W.2d at 831–34. *See De Leeuw, supra* note 14, at 452, 238 N.W.2d at 710.

[17] Note 14, *supra.*

[18] *Cook, supra* note 2, at 242–43, 142 N.W.2d at 832–33.

[19] *Id.* at 243, 142 N.W.2d at 833.

[20] Wis. A.B. 997 (1979); Wis. A.B. 306 (1977); Wis. A.B. 1324 (1975); Wis. A.B. 132 (1973).

## CONSTITUTIONALITY OF SEC. 108.04(10), STATS.

The nonstriking workers argue that sec. 108.04(10), Stats., violates the fourteenth amendment equal protection clause because it creates an arbitrary and unreasonable distinction between employees who are laid off involuntarily and without fault and nonstriking employees who lose employment due to a strike in the establishment in which they work.

Statutes are presumed to be constitutional and the challenger bears the burden of proving the statute unconstitutional beyond a reasonable doubt.[21] The test for reviewing legislative classifications such as this is whether there is a rational basis for the classification.[22] Our supreme court has also set forth five standards for measuring the reasonableness of classifications which are challenged on equal protection grounds.[23]

---

[21] *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 370, 293 N.W.2d 504, 511, *cert. denied,* 449 U.S. 1035 (1980).

[22] *County of Portage v. Steinpreis,* 104 Wis. 2d 466, 479 n. 12, 312 N.W.2d 731, 737 n. 12 (1981).

[23] These standards are:

" '(1) All classifications must be based upon substantial distinctions which make one class really different from another.

" '(2) The classifications adopted must be germane to the purpose of the law.

" '(3) The classifications must not be based upon existing circumstances only. They must not be so constituted as to preclude additions to the numbers included within a class.

" '(4) To whatever class a law may apply, it must apply equally to each member thereof.

" '(5) The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.' . . ." *State ex rel. La Follette v. Torphy,* 85 Wis. 2d 94, 99, 270 N.W.2d 187, 188 (1978) (footnote omitted); *Bence v. City of Milwaukee,* 103 Wis. 2d 679, 683, 309 N.W.2d 883, 885 (Ct. App. 1981).

However, these standards must be applied in light of the presumption that statutory classifications are reasonable and proper.[24]

In *Ohio Bureau of Employment Services v. Hodory*,[25] the United States Supreme Court rejected an identical challenge to a similar, but broader, statute. In *Hodory*, the worker was laid off from his job at the United States Steel Corporation's plant in Youngstown, Ohio, as a result of a nationwide strike at coalmines that were owned by the corporation and supplied the fuel for the Youngstown plant. The worker applied for and was denied unemployment benefits under an Ohio statute. The statute denied benefits to workers laid off because of a "labor dispute other than a lockout at any factory, establishment, or other premises located in this or any other state and owned or operated by the employer . . . for so long as his unemployment is due to such labor dispute."[26]

The Supreme Court held that the statute at issue did not "involve any discernible fundamental interest or affect with particularity any protected class" and applied the test of "whether the statute has a rational relation to a legitimate state interest."[27] The Court pointed out that if a "classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' "[28]

In applying this test, the Court determined that one of the purposes behind the statute was to prevent a

---

[24] *Torphy, supra* note 23, at 100, 270 N.W.2d at 188.

[25] 431 U.S. 471 (1977).

[26] *Id.* at 473 (footnote omitted).

[27] *Id.* at 489.

[28] *Id.* at 491 (citations omitted).

company from having to subsidize a union-instigated work stoppage which would place the employer at an unfair disadvantage in negotiations with unions. The Court noted that an employer's costs go up with any laid-off worker who qualifies for unemployment compensation and that the only way for an employer to stop these rising costs is to settle the strike. The Court characterized unemployment compensation as a lever pressuring an employer to settle and concluded:

The State has chosen to leave this lever in existence for situations in which the employer has locked out his employees, but to eliminate it if the union has made the strike move. Regardless of our views of the wisdom or lack of wisdom of this form of state "neutrality" in labor disputes, we cannot say that the approach taken by Ohio is irrational.[29]

The Wisconsin Supreme Court has determined that the legislative policy underlying Wisconsin's unemployment compensation act, including sec. 108.04(10), Stats., is to foster state neutrality in labor disputes and prevent an employer from being required to finance a strike against itself.[30] There is clearly a reasonable relationship between this policy and the statute denying unemployment compensation to nonstriking workers laid off because of a strike or bona fide labor dispute involving other employees at the same establishment.[31] We accordingly conclude that the nonstrik-

---

[29] Id. at 492.

[30] A.O. Smith Corp. v. DILHR, 88 Wis. 2d 262, 268, 276 N.W.2d 279, 282–83 (1979). Kansas City Star Co. v. DILHR, 60 Wis. 2d 591, 601, 211 N.W.2d 488, 493 (1973) cert. denied, 419 U.S. 870 (1974); Kenneth F. Sullivan Co., supra note 14, at 88, 130 N.W.2d at 196; Marathon Elec. Mfg. Corp., supra note 14, at 405, 408, 69 N.W.2d at 579, 581.

[31] See Hodory, supra note 25, at 491–92.

ing workers have not met their burden of proving that sec. 108.04(10) violates the equal protection clause.

In reaching this conclusion, we are aware that the denial of unemployment benefits to the nonstriking workers may have resulted in great financial hardship. However, it is for the legislature and not the courts to remedy this problem, if feasible.

*By the Court.*—Order affirmed.