ANCHOR SAVINGS & LOAN ASSOCIATION,
Petitioner-Appellant,

v.

EQUAL OPPORTUNITIES COMMISSION,
City of Madison and Roy U. Schenk, Respondents.†

Court of Appeals

No. 82–1508. Submitted on briefs September 9, 1983.—
Decided December 6, 1983.
(Also reported in 343 N.W.2d 122.)

† Petition to review granted.

For the appellant the cause was submitted on the briefs of *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

For the respondent City of Madison the cause was submitted on the brief of *Henry A. Gempeler,* city attorney, and *James L. Martin,* assistant city attorney.

Respondent's brief was submitted by *Roy U. Schenk, pro se,* of Madison.

Before Foley, P.J., Dean and Cane, JJ.

DEAN, J.  Anchor Savings & Loan Association appeals from a judgment affirming an order of the Equal Opportunities Commission of the City of Madison. The commission found that Anchor discriminated against Roy Schenk on the basis of his marital status, in violation of a city ordinance, when it denied Schenk a mortgage loan. Anchor argues that Madison did not have the power to regulate the lending practices of a state chartered savings and loan, and that Anchor did not unlawfully discrimi-

nate against Schenk. Because Madison did have the power to regulate Anchor and because Anchor did discriminate against Schenk based on his marital status, we affirm.

Schenk applied to Anchor for a mortgage loan. He was divorced and had court-ordered support and maintenance payments of $500 per month. In evaluating Schenk's creditworthiness, Anchor considered his fixed debt-to-income ratio, a computation that yields the percentage of an applicant's monthly income committed to repayment of recurring fixed expenses. Schenk's percentage exceeded the maximum percentage acceptable and his application was denied. His support and maintenance payments were considered fixed expenses and were used in calculating his percentage. Anchor did not consider as fixed expenses the family maintenance obligations of married persons seeking loans. Without the support and maintenance payments, Schenk's fixed debt-to-income ratio would not have exceeded the maximum acceptable percentage.

Anchor's challenge to Madison's regulatory power raises a question of law that we review independently. *See Nelson v. Union National Bank,* 111 Wis. 2d 313, 315, 330 N.W.2d 225, 226–27 (Ct. App. 1983). The commission's determination that Anchor discriminated is a question of law that will be sustained if reasonable. *See Jenks v. DILHR,* 107 Wis. 2d 714, 720, 321 N.W.2d 347, 351 (Ct. App. 1982).

Madison had the power to regulate Anchor's discriminatory lending practices. Cities possess all powers not otherwise denied them. Section 62.11(5), Stats.; *Wisconsin's Environmental Decade, Inc. v. DNR,* 85 Wis. 2d 518, 532–33, 271 N.W.2d 69, 75 (1978). A city's exercise of power is not made invalid because it deals with a matter of statewide concern. *Id.* at 533, 271 N.W.2d at 76. An

exercise of power is invalid only if there is express statutory language restricting or revoking it or if it infringes the spirit of a state law or the general policy of the state. *Id.*

Madison General Ordinance, sec. 3.23 (3), prohibits discrimination in credit transactions because of marital status.[1] Although the state, by statute and regulation, regulates the credit practices of savings and loans, *see* ch. 215, Stats.; Wis. Admin. Code § S–L 1.01 *et seq.*, there is no specific statutory language either restricting or revoking the city's power to regulate in this area. Nor does the city ordinance conflict with the state statute that also prohibits discrimination by lenders based on marital status. *See* sec. 138.20, Stats.[2] Anchor contends, however, that the city ordinance conflicts with a state policy of uniform statewide regulation of the lending practices of savings and loans.

---

[1] Madison General Ordinance, § 3.23 (3), provides:

*Credit.* It shall be an unfair discrimination practice and unlawful and hereby prohibited for any creditor to discriminate against any person in any credit transaction because of sex, race, religion, color, national origin or ancestry, age, handicap, marital status, source of income, arrest record or conviction record, lifespan, honorable discharge, physical appearance, sexual orientation, political beliefs, or the fact that such person is a student as defined herein.

[2] Section 138.20, Stats., provides in part:

Discrimination in granting credit or loans prohibited. (1) Rule. No financial organization, as defined under s. 71.07 (2) (d) 1, or any other credit granting commercial institution may discriminate in the granting or extension of any form of loan or credit, or of the privilege or capacity to obtain any form of loan or credit, on the basis of the applicant's physical condition, developmental disability as defined in s. 51.01 (5), sex or marital status; provided, however, that no such organization or institution shall be required to grant or extend any form of loan or credit to any person who such organization or institution has evidence demonstrating the applicant's lack of legal capacity to contract therefor or to contract with respect to any mortgage or security interest in collateral related thereto.

The city ordinance, by providing an additional agency to prevent discriminatory lending practices, does not conflict with any state policy. The city ordinance regulates lending practices only to the extent those practices are discriminatory. Practices that under the ordinance discriminate based on marital status would also be prohibited under the state statute and regulations. Since the ordinance conflicts with neither state law nor policy and is not expressly forbidden, it is not invalid.

The commission's determination that Anchor discriminated against Schenk because of his marital status was reasonable. Schenk was required to first make a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).[3] A prima facie case is established by showing (1) he belongs to a protected group; (2) he applied and was qualified for a loan; (3) his application was rejected despite his qualifications; and (4) married applicants with his income and expenses were not rejected based on their fixed debt-to-income ratio. *See id.* Once established, the burden then shifted to Anchor to present some nondiscriminatory reason for rejecting Schenk's application. *See id.*

The evidence Schenk presented established a prima facie case of discrimination. He belonged to the protected group of divorced persons. If he had not been divorced, his family maintenance payments, although

---

[3] Neither the Madison city ordinance nor state statutes or case law address the burden of proof issue in credit discrimination cases. We therefore look to the law developed under the Federal Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* Federal courts have applied anti-discrimination decisions from the employment area to ECOA cases. *See Carroll v. Exxon Co., U.S.A.,* 434 F. Supp. 557, 563 n. 14 (E.D. La. 1977).

still required to support his family, would not have been court ordered and therefore not considered a fixed monthly debt. His fixed debt-to-income ratio would then have been within the acceptable limits. Married applicants with Schenk's expenses and income, but without court-ordered maintenance payments, would not have been rejected for loans based upon their fixed debt-to-income ratio.

In response, Anchor did not present a nondiscriminatory reason for rejecting Schenk's application. It did not show why the family maintenance expenses of married persons are not considered. Although federal law allows lenders to inquire into an applicant's family maintenance obligations, *see* 12 C.F.R. § 202.5 (d) (1), it does not follow that federal law also allows lenders to base a divorced applicant's creditworthiness on those factors without also considering them for married applicants. Since Anchor did not rebut Schenk's showing of discrimination, the commission's determination was justified.

*By the Court.*—Judgment affirmed.

FOLEY, P.J. (dissenting). The comprehensive provisions of ch. 215, Stats., preempt regulation of the loan practices of savings and loan associations. Chapter 215 demonstrates an intent to have uniform and experienced regulation and enforcement, which would be impossible if every city was allowed to separately regulate. For some of the same reasons that Madison cannot set utility rates, or require banks to make specific investments in the city, or require insurance companies to take improvident local risks, it should not be allowed to regulate Anchor's loan practices. Regardless of the purpose of Madison's ordinance, because its effect is to regulate loan practices, I would reverse the judgment.

Also, even if Madison was entitled to regulate Anchor's loan practices, it was reasonable for Anchor to treat Schenk's support obligation differently from the support obligation of a married person. Unlike a married person's support obligation, Schenk's court-ordered obligation is fixed. While a married person may reduce or temporarily defer family expenses without fear of being put in jail, Schenk must make his support payments regardless of what other debts he may have voluntarily incurred since his divorce. Schenk must also feed and shelter himself in separate quarters, and he may marry again and create an equal obligation to a second family. While I agree that discrimination in lending based solely on marital status is wrong and should not be tolerated, I consider it equally wrong for the law to require a lender to ignore relevant factual distinctions that exist as a consequence of divorce.